(May 28, 1987)

■ SHIRLEY WALKER, as Administratrix of the Estate of CALVIN L. TOLER, JR., Deceased, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant, et al., Defendant.—Judgment of the Supreme Court, Bronx County (Barry Salman, J.), entered on or about November 18, 1985, pursuant to a jury verdict awarding plaintiff the sum of $659,870 after reduction by the court, is affirmed, without costs or disbursements.

This is a wrongful death action in which plaintiff's intestate 19-year-old son, Calvin L. Toler, Jr., was struck and killed at the above-ground Gun Hill Road station in The Bronx by a subway train owned by defendant New York City Transit Authority and operated by its motorman. In that regard, there was testimony at trial that the train proceeded into the station at an excessive rate of speed, that the station was well lighted and that the motorman could have stopped the train in time to avoid hitting the decedent but negligently failed to do so. Indeed, the dissent concedes that there was sufficient evidence before the jury for it to have reasonably concluded that defendants were negligent and, therefore, responsible for Toler's death. Although the dissent believes that the jury should have found the decedent contributorily negligent due to the evidence of his immoderate intake of alcohol, the dissent admits that "it was the jury's prerogative to disregard [such] evidence of the decedent's contributory fault." However, the dissent would reverse the judgment in favor of plaintiff on the basis of a unique ground. According to the dissent, the

jury's award of an "astronomically excessive" verdict, which was subsequently substantially reduced by the court, coupled with the jury's failure to hold the decedent contributorily negligent, was an indication of bias on the part of the jury and its total lack of consideration for the evidence. Therefore, the dissent concludes, the fairness of the entire verdict must be thrown into serious question, and a reversal of the judgment is warranted notwithstanding that there was adequate proof available to the jury to sustain its verdict.

However, there is no legal authority for the novel proposition that a jury determination as to liability should be vacated, even where amply supported by the evidence, simply because of the excessiveness of the monetary amount of the award. The trial court properly reduced the verdict. Where appropriate, jury awards are commonly trimmed by either trial or appellate courts. The fact that a jury may not have suitably calculated the amount of damages to which a party is entitled cannot be deemed to mean that the jury was biased and did not reasonably assess the evidence before it with respect to liability, or that the more excessive was the award the greater the indication of the jury's unfairness. The judgment herein being proper in all respects, it should be affirmed. Concur—Carro, Asch and Milonas, JJ.

Murphy, P. J., and Rosenberger, J., dissent in a memorandum by Murphy, P. J., as follows: On July 31, 1982, at about 12:30 A.M., Calvin Toler was run over by a subway train as it entered the Gun Hill Road station on the IRT number 5 line. Shirley Walker, the decedent's mother and administratrix of his estate, commenced the present wrongful death action in June 1983. A trial of the matter was held in June 1985.

At trial the only testimony directly probative of the manner in which the decedent met his end was supplied by defendant "John" Nelson, the motorman of the train involved in the accident. Nelson testified that the train was not equipped with a speedometer but that he was able to estimate its speed with some margin for error. He stated that as the train approached the Gun Hill Road station it was traveling between 30 and 35 miles per hour. Upon entering the station, Nelson estimated that the train slowed to about 25 miles per hour. He indicated that the visibility was good, affording him a clear view down the tracks. He did not see anyone in his field of vision either on the tracks or the adjoining platform until he was about halfway into the station. At that point he saw the decedent approximately 75 feet off emerging from the obscured area under the platform overhang and crawling head first into the

path of the oncoming train. Nelson stated that he immediately triggered the emergency braking mechanism but that the train did not come to a halt until the first, and part of the second car, had run over the decedent.

Shortly after the accident the decedent was removed from the tracks by police and EMS personnel. He did not exhibit any signs of consciousness and was pronounced dead before his arrival at Jacobi Hospital.

The autopsy indicated that the decedent had indeed died from injuries caused by the impact of the train. It also showed that at the time of the accident the decedent was inebriated. Dr. Donald Hoffman, a senior chemist in the office of the Chief Medical Examiner of the City of New York, testified that analysis of the decedent's brain tissue disclosed an ethanol level of .20. He further testified that it could be said with a reasonable degree of scientific certainty that an ethanol level of that magnitude indicated a still higher blood alcohol level, one at which a person would suffer significant impairment of judgment and decreased ability to perceive danger. In addition, Dr. Hoffman stated that a brain alcohol concentration such as that found in the decedent was often accompanied by marked impairment of motor coordination, slowed reaction time, and inability to stand steadily. When asked on cross-examination how much alcohol it would take to produce an ethanol level of .20, Dr. Hoffman replied that an individual of decedent's weight (185 pounds) would have had to consume and fully absorb at least 12 standard-sized drinks. Dr. Hoffman's testimony stood unrefuted to the conclusion of the trial.

The proof concerning damages established that at the time of the accident the decedent was 19 years old. He had dropped out of high school in his junior year, and during the year preceding his death had been employed as a provisional office aide with the city Department of Finance. He earned $413 every two weeks. According to his mother, he gave her about $60 each week. Funeral expenses amounted to $3,233. The decedent's life expectancy was 47 years and that of his mother, the plaintiff, 30 years.

The trial court's charge to the jury included clear instructions on comparative negligence. The charge also included careful instructions that damages for wrongful death, if awarded, should be limited to plaintiff's pecuniary loss: "Since the statute limits recovery to a pecuniary injury, you may not consider or make any award for sorrow, mental anguish or injury as to feeling or loss of companionship. You must appraise in an impartial manner to the best of your ability

the pecuniary or money value of the decedent to his mother on the day he died."

The jury returned with a verdict finding defendant wholly responsible for decedent's death and awarding plaintiff damages totaling $6,000,000—$1,000,000 for the decedent's conscious pain and suffering and the remaining $5,000,000 purportedly for plaintiff's pecuniary loss as the result of her son's wrongful death.

Thereafter, defendants moved pursuant to CPLR 4404 (a) to set aside the verdict as excessive and contrary to the weight of the evidence. The court granted the motion to the extent of setting aside the $1,000,000 recovery for conscious pain and suffering on the ground that it was not supported by legally sufficient evidence, and directing a new trial on the issue of pecuniary damages for wrongful death unless plaintiff stipulated to accept a reduced award of $600,000. Plaintiff so stipulated and the present appeal by defendants ensued.

While the court's ruling on the posttrial motion was proper as far as it went, it did not, in my view, go far enough; the wrongful death verdict should have been entirely set aside as contrary to the weight of the evidence and a new trial ordered solely as to plaintiff's second cause of action.

At the outset, I would note that there was evidence before it from which the jury could reasonably have concluded that the defendants had been negligent and were in some measure responsible for the decedent's death. Expert testimony which the jury was free to credit indicated that the train was traveling too rapidly as it entered the station, and that had it been traveling at the proper speed it would have been able to stop before running over the decedent, if in fact the motorman did, as he testified, put on the emergency brake immediately upon observing the decedent at a distance of 75 feet.

That defendants may have been partly responsible, however, does not alter the fact that there was compelling and uncontradicted evidence of the decedent's contributory fault. The testimony of the motorman and Dr. Hoffman indicated that the decedent, heavily intoxicated, and apparently bereft of judgment and motor control, crawled from the relative safety of the area under the platform overhang directly into the path of the approaching train. It was only by completely disregarding this testimony bearing on the decedent's state and actions that the jury could have reached the conclusion that the decedent was not negligent and was in no measure responsible for bringing about his own demise.

Of course, it may be argued that it was the jury's preroga-
tive to disregard the above-described evidence of the dece-
dent's contributory fault. Indeed, the jury for sound reasons is
given wide latitude to weigh the evidence as it sees fit and to
resolve factual issues accordingly. It remains true, however,
that a jury's verdict may be overturned if it is contrary to the
weight of the evidence *(Nicastro v Park,* 113 AD2d 129, 132;
*McCarthy v Port of N. Y. Auth.,* 21 AD2d 125, 127; Siegel, NY
Prac § 406, at 537; CPLR 4404 [a]).

The precise circumstances warranting judicial negation of a
jury verdict as contrary to the weight of the evidence are not
susceptible of exhaustive definition. *(Nicastro v Park, supra,* at
132; *Mann v Hunt,* 283 App Div 140, 141; 4 Weinstein-Korn-
Miller, NY Civ Prac ¶ 4404.02.) There must, of course, be
evidence pointing strongly to a result other than that reached
by the jury. This, however, is not enough, for, as noted, it is
ordinarily the province of the jury to evaluate the evidence
and decide what is and is not worthy of credit. Additionally,
then, there must be clear indication that in reaching its result
the jury has not weighed the evidence fairly. *(Nicastro v Park,
supra,* at 134; *Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48
NY2d 643; *O'Boyle v Avis Rent-A-Car Sys.,* 78 AD2d 431, 439.)
Thus, it is the fairness of the jury's interpretation of the
evidence that forms the essential point of inquiry on a motion
to set aside a verdict as contrary to the weight of the evi-
dence. Whether the jury's verdict can be said fairly to reflect
the evidence in the case as a matter addressed to the court's
discretion. *(Nicastro v Park, supra,* at 134; *Mann v Hunt,
supra,* at 141; Siegel, NY Prac § 406; 4 Weinstein-Korn-Miller,
NY Civ Prac ¶ 4404.09.) Although the court's discretion to set
aside a verdict is substantially limited by the deference due
the jury's determination *(Nicastro v Park, supra,* at 136), it
must on occasion be exercised when the court, viewing the
proceeding as a whole in light of its experience in the study
and practice of law *(see, Mann v Hunt, supra,* at 141), con-
cludes that the verdict could not have been the product of the
jury's fair-minded evaluation of the evidence.

Had the jury in the present matter returned a verdict
unremarkable in all respects save that of finding the decedent
faultless, I would be inclined to agree that the trial court had
not abused its discretion in failing to set aside the wrongful
death verdict. Although the above-described evidence of the
decedent's contributory negligence was indeed strong, the
failure of the jury to credit this evidence was of itself not
necessarily indicative of any unfairness in its interpretive

process. The testimony of the motorman as to the decedent's actions in the moments just prior to his death might have been disbelieved by the jury on the ground that the motorman, as a named defendant and an employee of defendant Transit Authority, was an interested witness. While this benign explanation for the jury's comparative negligence verdict seems highly improbable given the fact that the motorman's testimony was notable for its consistency and candor, and contained numerous damaging admissions obviously credited by the jury, it would nevertheless be sufficient to support the trial court's decision not to set aside the verdict as contrary to the weight of the evidence were it not for the remainder of the verdict which demonstrates with consummate clarity that the jury's interpretation of the evidence in this case was anything but fair.

Initially, it should be noted that despite the complete absence of any evidence that the decedent survived for an appreciable period after having been run over by the train, much less that he survived consciously, the jury returned a $1,000,000 verdict for conscious pain and suffering. The award is not merely excessive, as plaintiff concedes, it was without any factual basis and was properly set aside as a matter of law by the trial court.

The jury's complete disregard of the need for some evidentiary basis for its determination was, unfortunately, not neatly confined to its disposition of the conscious pain and suffering cause of action, but also pervaded its assessment of damages on the wrongful death claim. After having been instructed quite clearly that plaintiff could only be compensated for her pecuniary loss (see, EPTL 5-4.3), the jury went ahead and awarded her $5,000,000. It did so in the face of undisputed evidence that the decedent earned about $200 a week of which he gave his mother, the plaintiff, about $60. Even if we assume that the decedent would have continued his employment—which it must be noted was provisional—for the duration of his mother's 30-year life expectancy; and that being an attentive son he would have continued to help his mother financially; and that despite his failure to complete high school he would have maintained and perhaps even increased his income, it is utterly inconceivable that he would have made anything approaching a $5,000,000 contribution to the plaintiff's financial well-being. This award is not explicable as an innocent overvaluation of the decedent's pecuniary worth to his mother; it exceeds not by thousands or even hundreds of thousands of dollars, but by millions that which

might reasonably have been awarded on the basis of the evidence adduced. A divergency of such magnitude between a verdict and the underlying proof bespeaks a patent disregard by the jury of both the evidence and the law according to which the jury was charged. Whether or not the extraordinary excessiveness of this verdict is to be understood, as counsel for plaintiff suggests, as an expression of the jury's sympathy for a mother bereft of her only son, it remains clear that the jury did not assess pecuniary damages for wrongful death based on any fair interpretation of the evidence.

It is only by taking the most artificial view of the within verdict that it is possible to conclude that the same jury which awarded $1,000,000 for conscious pain and suffering in the absence of any grounds for liability, much less damages, and which awarded an astronomically excessive $5,000,000 to compensate plaintiff for pecuniary loss which could not be even generously estimated as amounting to more than $200,000, was at the same time scrupulously fair in its consideration of the evidence bearing on the decedent's contributory fault.

While the judicial remedy for an excessive verdict is ordinarily to reverse and remand for a new trial on the issue of damages unless the plaintiff will stipulate to the reduction deemed appropriate by the court, here the jury's lack of regard for the evidence was so pervasive and extreme as to throw the fairness of the entire verdict into serious question. Simply put, the fundamental problem with the verdict was not excessiveness; excessiveness in this case was but a symptom of the jury's evident unwillingness to conform its verdict to the evidence or to abide by the court's charge.

Considering this verdict as a whole, I am persuaded that it does not reflect fairly the evidence in the case and that it should, therefore, be set aside as contrary to the weight of the evidence. Had the jury viewed the evidence before it with the requisite impartiality and objectivity, it would seem highly probable, if not certain, that the comparative negligence issue would have been differently disposed of. It is precisely in circumstances such as these that a verdict ought to be set aside on weight of the evidence grounds. Were the evidence conclusively contrary to the jury's determination, the verdict would have to be set aside as a matter of law. *(Cohen v Hallmark Cards,* 45 NY2d 493, 499.) Where, as here, however, the evidence is not conclusive on the merits but is sufficient to demonstrate convincingly that the jury's interpretative process was less than fair, the aggrieved party should be permit-

ted another opportunity to litigate its claim or defense. *(See, Nicastro v Park, supra,* at 134-135.)

If the wrongful death verdict is not to be set aside, it should at the very least be further reduced. Although the trial court's $4,400,000 reduction in the verdict was indeed substantial, it left plaintiff with a $600,000 recovery which, in my view, is still grossly excessive. As noted, there is simply no way, given the evidence in this case, that plaintiff's pecuniary loss, which was the only proper basis for any award of damages, could have been valued at more than $200,000. It is not surprising then that plaintiff cites not one case where an award approaching $600,000 was upheld in circumstances comparable to those in this case. Even an award of $200,000 must be regarded as generous, entailing as it does many very favorable assumptions and speculations about the decedent's prospects had he lived.

Accordingly, I dissent and would modify the appealed judgment to the extent of setting aside the jury verdict on plaintiff's wrongful death cause of action as against the weight of the evidence and remanding for a new trial as to that cause. Alternatively, I would order a new trial solely on the issue of pecuniary damages for wrongful death unless plaintiff stipulates to a reduction in the amount of the verdict to the sum of $200,000.