■ Thomas Torelli, Appellant, v City of New York et al., Respondents, et al., Defendant.—Order, Supreme Court, Bronx County (Herbert Shapiro, J.), entered on or about March 5, 1990, which, *inter alia,* granted the post-trial motions of defendants City of New York and Grossman Paper Corporation to set aside the verdicts rendered against them as a matter of law and directed dismissal of the complaint against them, and which granted the motion of defendant Barbara Santorini to the extent of directing a new trial on damages for conscious pain and suffering unless plaintiff agreed to a reduction in such award from $1,074,000 to $75,000, is modified, on the law and the facts, to reverse the order insofar as it set aside the verdict against defendant City of New York, reinstate the verdict, and increase the amount to which plaintiff must agree in order to avoid a new trial on damages for conscious pain and suffering to $250,000, and is otherwise affirmed, without costs.

Plaintiff, who is decedent's father, brought this action to recover damages for the wrongful death and conscious pain and suffering of his son, who died in a head-on collision with a vehicle which was owned and driven by Robert LaFauci, a salesman for defendant Grossman Paper Corporation ("Grossman").

LaFauci, a New Jersey resident, along with his supervisor, John LaColla, had been in Hempstead, Long Island, at a meeting with a potential client on the afternoon of January 16, 1980, after which they drove to a Kew Gardens bar. According to LaColla, LaFauci had a number of drinks over the course of two hours. According to LaColla's trial testimony, between 6:00 and 7:00 p.m., LaFauci simply left, with-

out saying anything, leaving LaColla without transportation home to New Jersey, where both men lived. In a pretrial affidavit, LaColla had stated that when LaFauci left the bar he was headed home. At about 9:45 P.M., LaFauci's automobile was observed heading northbound at approximately 40 miles per hour in the southbound lane of the Hutchinson River Parkway immediately north of the Baychester Avenue exit. The road, at the point where LaFauci was first observed, was straight and unobstructed, with various cars proceeding southbound, all of whom avoided LaFauci until he reached a drawbridge approximately a half mile from where he was first seen. The bridge created an incline in the road sufficient to limit the ability of an oncoming southbound driver to see a substantial distance of the road ahead. Although a driver across the grass divider on the northbound side of the Parkway attempted to alert LaFauci as he neared the bridge by blowing her horn and flashing her lights, he drove on, and the fatal accident occurred immediately past the opposite end of the bridge. LaFauci's blood alcohol level was later determined to have been at .18%.

The evidence at trial showed that wrong-way access to the Parkway via the Baychester Avenue exit could easily be had by way of a simple right turn from Bartow Avenue onto a turnoff located a few feet before the intersection with Baychester. A vehicle taking the turnoff would be headed the wrong way on the Baychester Avenue extension, which then simply turned into the Baychester Avenue exit of the Hutchinson River Parkway. Although such a turn would, of course, be illegal and hazardous, there were no "DO NOT ENTER" signs or any other indications that the turn was improper. Moreover, once a car used the turnoff to turn the wrong way onto the Baychester Avenue extension, its driver could be misled by the presence of a number of "no parking" signs located so that they faced oncoming wrong way traffic, which would imply to a driver that he was headed in the correct direction.

Plaintiff brought this action against LaFauci's estate, against LaFauci's employer Grossman on the theory of respondeat superior, and against the City for failing to properly maintain traffic signals at the Baychester Avenue exit to the Parkway. The jury found that LaFauci had entered the Parkway through the Baychester Avenue exit, which, it found, was negligently maintained, that LaFauci was 40% responsible for the accident, that the City was 60% responsible, and that LaFauci had been acting within the scope of his employment.

The IAS court set aside the verdicts against both Grossman

and the City, finding that the evidence against them was insufficient as a matter of law, and granted a new trial against LaFauci's estate on the issue of damages for conscious pain and suffering unless plaintiff agreed to a reduction of those damages to $75,000.

A jury verdict is not supported by sufficient evidence as a matter of law when there is "no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" *(Cohen v Hallmark Cards,* 45 NY2d 493, 499). Applying this standard, we find that the Court improperly dismissed plaintiff's claim against the City. The City's liability was based on the fact that the lack of signs at the Baychester Avenue exit of the Parkway could have misled a person into believing it was an entrance. The City does not claim that this was not so but, rather, contends that the proof was not adequate to demonstrate that LaFauci entered the Parkway at that location.

While there was no direct proof as to where LaFauci entered the Parkway, we find that the circumstantial evidence established a sufficient causal link between the City's negligence and the accident so that reasonable persons "might conclude that it is more probable than not that the injury was caused by the defendant". *(Mertsaris v 73rd Corp.,* 105 AD2d 67, 83.)

First, the evidence demonstrated that it was clearly more likely that LaFauci gained access to the Parkway closer to where he was first observed rather than farther, since each second that passed as he drove along the Parkway the wrong way increased the probability of an accident. This fact plus the configurations of the other exits rendered it highly improbable that LaFauci entered the highway at any exit other than Baychester Avenue. The two other nearest exits were Stillwell Avenue, which was 15/100s of a mile further than Baychester Avenue from the site of the accident and Pelham Parkway, which was not only a further 3/10 of a mile beyond Stillwell but separated from it by a substantial curve in the road, which would have been particularly difficult for LaFauci to have successfully negotiated without an accident occurring sooner. The evidence regarding the respective locations and physical characteristics of the three possible accesspoints to the Parkway, which were clearly and graphically demonstrated to the jury by photographs, showed that every other possible path of wrong-way entry at the Stillwell Avenue and Pelham Parkway exits, with only one exception, required the driver to make one or more obviously improper U-turns against traffic. While entry could

be gained through the middle prong of the Stillwell Avenue exit without a U-turn, there were two prominent DO NOT ENTER signs, one on each side of Stillwell Avenue, at the point at which that street became one-way and, in addition, it was impossible to reach the intersection of Stillwell Avenue and Ely Avenue without extensive travel on local streets. This was in sharp contrast to the Baychester Avenue exit, which virtually invited wrong-way entry, and which was located directly across the street from the Bartow Avenue exit of the New England Thruway. Based on all such facts and circumstances it was reasonable for the jury to find that LaFauci entered the highway via the Baychester Avenue exit.

In light of the flow of traffic and the direct manner in which the turnoff led to the wrong way entrance to the Parkway, the conceded absence of any signs or warnings indicating that Baychester Avenue led to the exit from the southbound lane of the highway, rather than to an entrance, could be found to be negligence on the part of the City in maintaining that exit in a dangerous condition. Indeed, the City does not seriously contest the fact that it was negligent in failing to properly maintain the necessary signs and warnings at that location. Instead, it argues that, even assuming that the absence of such signs constituted negligence, such negligence could not be a proximate cause of the accident because LaFauci's inebriated state would have rendered him incapable of appreciating the significance of any such signs or warnings and would not have deterred him from entering the highway in the wrong direction. While the City contends that the level of defendant LaFauci's intoxication mandates such a conclusion, as a matter of law, there is no evidence in the record to indicate that LaFauci's intoxication rendered him completely insensible or prevented him from understanding or responding to traffic signs or signals. On the contrary, the fact that LaFauci had successfully navigated his way from Queens to the Bronx, which necessarily involved traversing complex bridges, highway interchanges and streets known to be frequently burdened with various construction obstructions, could permit the jury to reasonably conclude that LaFauci possessed a sufficient ability to respond to relevant traffic signs, albeit perhaps not with optimum efficacy, and that the failure of the City to properly maintain such signs at the Baychester Avenue exit, which constituted a danger to motorists, was a substantial factor in bringing about the accident and was a proximate cause thereof *(see, Humphrey v State of New York,* 90 AD2d 901, *affd* 60 NY2d 742). Parenthetically, it may be noted that

the City successfully opposed the plaintiff's efforts to introduce both expert testimony by a toxicologist, previously used by the City itself in other cases, as to the level of awareness and ability to respond by one who was in LaFauci's state of intoxication as well as evidence regarding prior incidents of wrong-way entry at the Baychester Avenue exit. The preclusion of such evidence in both respects was error. Were we not reversing to reinstate the verdict against the City, such errors would, in any event, warrant a new trial against the City. While we find that the verdict against the City is supported by a preponderance of the evidence, we affirm the trial court's decision to set aside the verdict as against Grossman. Generally, when employees, such as LaFauci, use their automobiles on their employer's behalf, they are deemed to be acting within the scope of their employment from the time they leave their homes to commence work until the time they either arrive home or otherwise deviate from their employment by engaging in an independent personal activity *(Lundberg v State of New York,* 25 NY2d 467, 471). In the instant case the evidence clearly demonstrated that, at the time the accident occurred, LaFauci had long since ceased to be within the scope of his employment.

It is clear that, when LaFauci joined his supervisor for drinks after their meeting with a potential client, he was acting solely to satisfy a personal desire rather than an obligation he owed to his employer. LaColla denied that he and LaFauci discussed any business whatsoever and there was no other evidence that this social encounter was in any way related to LaFauci's work. Moreover, the evidence indicates that LaFauci further deviated from his employer's business when he left the bar. While, in a pretrial affidavit, LaColla stated his impression that LaFauci left the bar to go home, the actual proof indicated that he was not headed home, since the accident did not take place upon the direct route between Kew Gardens and LaFauci's home in northern New Jersey and occurred three hours after LaColla said LaFauci left the bar. Based on these uncontradicted facts, the jury's finding that LaFauci was still within the scope of his employment cannot be held to be founded on sufficient evidence.

Finally, upon a review of the evidence we agree with the IAS court that the jury's verdict for conscious pain and suffering was excessive. However, taking into account the pre-impact fear and terror which necessarily attended plaintiff's decedent's observation of LaFauci's automobile bearing down upon him, the horrendous nature of the injuries, which in-

cluded severance of the thoracic artery, and the evidence of consciousness for at least 15 minutes and possibly as long as an hour, we find that the amount to which the trial court reduced the verdict was inadequate and that the sum of $250,000 is a more appropriate award for such damages. Concur—Rosenberger, J. P., Ellerin, Wallach and Ross, JJ.

Smith, J., concurs in part and dissents in part and would also affirm the order appealed insofar as said order dismissed the action against defendant City of New York.