**Lorette STREHLE, individually and as Administratrix of the Estate of Richard Francis Meyer, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

### No. 92 Civ 9003 (VLB).

United States District Court, S.D. New York.

Aug. 5, 1994.

John H. Reilly, Dickerson & Reilly, New York City, for plaintiff.

Arthur J. Gribbin, U.S. Dept. of Justice, Torts Branch, Civ. Div., New York City, for defendant.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

This admiralty suit against the United States brought under the Public Vessels Act (46 U.S.C. § 781), the Jones Act (46 U.S.C.App. § 688) and the Death on the High Seas Act (46 U.S.C.App. §§ 761–62), involves the death of Seaman Richard Fran-

ces Meyer ("Meyer") on board a United States Navy vessel caused by entrapment in ropes being spun by a winch.

On March 7, 1994 the court approved a stipulation of the parties providing in part:

1. A submission will be made to the Court ... by both parties on stipulated facts, to the extent feasible, and through affidavits, deposition testimony, written expert reports and other evidence to the extent not covered by stipulation. Presentation of live testimony is not necessary except to the extent found so by the court.

2. If the Court finds liability on the material submitted, the court will then determine damages based on the material provided by the parties and enter judgment accordingly.

3. If the Court cannot make an affirmative finding of liability based on the information provided, the Court will inform the parties that further submissions will be necessary to render a final judgment as to that matter. In that event, further litigation steps are not waived ... and such matters would remain open for consideration as counsel deems necessary.

The parties thereafter filed a stipulation of facts attached to this memorandum order as Appendix A,* and other materials. The facts set forth in Appendix A, whether or not repeated here, are found to be true. This memorandum order constitutes findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52.

■ Factual findings of the United States Coast Guard investigation are also deemed admissible under Fed.R.Evid. 803(8); see *Beech Aircraft Corp v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). By contrast, Coast Guard investigators' opinions and conclusions are not considered in order to prevent the fear of financial liability to lead investigators or other such report makers to downplay errors committed which require correction. See *Reliable Transfer Co. v. United States*, 53 F.R.D. 24 (E.D.N.Y. 1971) and authorities cited.

The basic facts are undisputed, and based upon them the United States is liable based upon both negligence and unseaworthiness of the vessel. Plaintiff is awarded $28,600 for loss of income to Meyer's dependents and $50,000 for pain and suffering experienced by Meyer while trapped in the winch.

II

The basic facts not in dispute, some of which are set forth in greater detail in Appendix A, include the following: Meyer was born in 1953. After serving as a Navy Petty Officer, and thereafter as a civilian seaman, Meyer was killed on December 1, 1991 while performing his duties on the M/V Cape Horn, a vessel built in Norway in 1979 and owned by the United States. Operated at the time of the accident by Interocean Management Corporation of Philadelphia, Pa., the vessel was approximately 750 feet in length, with a breadth of 106 feet.

On the day of the accident the vessel was moored off Saudi Arabia in connection with Operation Desert Storm. Meyer attempted to retract on a spool a rope line controlled by a power winch designed to feed such rope in and out. The winch is built so that it can accelerate while moving the line under certain circumstances.

Meyer was found lying face up on the winch. His leg was wrapped up to the knee in the mooring line. His left arm was injured, he had a bruise on the abdomen, contusions on the chin and face, and broken teeth. There was a large amount of partially dried blood on the body.

The winches of the vessel had been identified as defective on prior occasions, and a "deadman" feature tending to stop rotation of the winch and prevent its acceleration if its activation was interrupted was known not to be working properly. Meyer was caught in the toils of the winch and ground to death. There were no witnesses to the accident; the event was hidden from view by deck cargo.

Meyer was unmarried, survived by four siblings; plaintiff Loretta Strehle, one of Meyer's sisters, is his Administratrix and resides in Pawling, New York.

* Editor's Note: Appendix deleted for purposes of    publication.

## III

■ Failure to correct the malfunctioning of the winches and their "deadman" safety feature constituted negligence, triggering liability under the Jones Act, 46 U.S.C.App. § 688, embodying the Federal Employers' Liability Act, 45 U.S.C. § 51–59. It is not necessary to determine here the level of probability that failure of the "deadman" feature in particular occurred in connection with, or contributed to, the accident. The fact remains that the winches had been earmarked as requiring repair. No reason other than defects could reasonably have led to the disaster which occurred.

■ Liability for both negligence and unseaworthiness is imposed by the Death on the High Seas Act, 46 U.S.C.App. §§ 761–762. See *Miles v. Apex Marine Corp*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). This statute is applicable where seamen are killed on the high seas, which the defendant United States agrees is deemed to embrace territorial waters of other nations. *First & Merchants Bank v. Adams*, 1981 AMC 2592 (4th Cir.1981) (not otherwise reported). The vessel was unseaworthy because of the defects in its winches, leading to the accident at issue. Thus recovery is authorized whether or not negligence were found.

## IV

■ The United States has no direct evidence of contributory negligence by what it concedes was a "very conscientious" ocean worker, but nevertheless asks the court to find that it was inherent in not having others present to assist him. Whether this would have avoided the accident we can never know. What we do know is that the accusation leveled at Meyer was "overzealousness" in performing his duties as a civilian combatant in Operation Desert Storm. The taking of necessary creative risks to get a critical job done can hardly be transmuted into comparative negligence for budgetary reasons; there is no factual basis for assuming that Meyer was negligent rather than courageous.

## V

■ The Jones Act, incorporating the Federal Employers' Liability Act, authorizes payments for monetary loss growing out of negligence to "next of kin dependent upon" the employee. 45 U.S.C. § 51.

Meyer was 39 at the time he was killed, with a work expectancy estimated at 26 years. He contributed a total of approximately $1,100 annually to the support of his four siblings.

■ Dependency refers to contribution "in whole or in part" in maintaining the manner in which the dependent was living. *Hollie v. Korean Air Lines*, 1994 WL 38785 *2 (S.D.N.Y.1994). The amounts involved may be as important to Meyers' three sisters as far larger amounts may be to others or to most institutional entities. To reduce their claims to zero rather than proportionately would run counter to the interests of justice.

■ The lesser degree of dependency involved here than in most other cases of this type necessarily reduces the award on this claim, but need not eliminate it for another reason: admiralty law generally employs comparative concepts rather than "Yes or No" categories. *United States v. Reliable Transfer Co*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); see also *McDermott v. AmClyde*, — U.S. —, —, 114 S.Ct. 1461, 1462, 128 L.Ed.2d 148 (1994); authorities cited, *TIAA v. Coaxial Communications*, 799 F.Supp. 16 (S.D.N.Y.1992).

Taking a conservative approach not seeking to anticipate inflation because of the lesser dependency involved, $28,600 is awarded to plaintiff based upon loss of support, to be distributed among deceased's sisters.[1]

## VI

Under the Federal Employers' Liability Act (45 U.S.C. §§ 51–59), applicable through the Jones Act, any right of action provided by those Acts—including injury under 45

---

1. The court will not undertake the division of the amounts to be so distributed to each unless requested to do so.

U.S.C. § 51 which embraces pain and suffering—"shall survive to his or her personal representative, for the benefit of . . . the next of kin dependent upon such employee. . . ." 45 U.S.C. § 59. The United States does not contest the applicability of such survival to the negligence claim here. Under general maritime law, embracing unseaworthiness, "elements of damage ordinarily pursued in a survival action [include] pain and suffering inflicted upon the decedent prior to death . . ." *Wahlstrom v. Kawasaki Heavy Industries,* 4 F.3d 1084, 1093 (2d Cir.1993). While for reasons explained in *Wahlstrom,* loss of future earnings may not be recovered in such suits, a decedent's beneficiaries "may recover damages for [the decedent's] pain and suffering prior to death, to the extent that it can be established at trial." Id.

## VII

■ It is clearly inferable that Meyer, caught by the winch which was grinding him to death, suffered intense pain while also confronting the certainty of death.[2]

It is implausible to suggest that death could have been instantaneous where one is tied up in a mesh of rope and no single instant death-dealing blow appears to have been received. Yet it is equally difficult to determine the exact length of his suffering, although it is doubtful that the suffering lasted for an extended period.

The problem of fixing a monetary award is exacerbated by the fact that pain and suffering can not rationally be given a dollar value. Would any of us willingly endure the pain and suffering experienced by the decedent in return for a substantial monetary payment?

## VIII

The United States in its discussion of damages cites a case involving pain estimated at five to ten seconds, where $85,000 was awarded, as well as rulings awarding lesser amounts.

Not surprisingly, plaintiff has selected cases involving more generous awards.

Where a similarly horrific experience occurred when a seaman was washed overboard and drowned in *Valverde v. US Lines,* NYLJ 7/16/91, p. 22 col. 2 (Sup.Ct.N.Y.Co.), a jury awarded $1,500,000. Five hours of conscious pain and suffering prior to death was held by the appellate court to justify an award of $300,000 in *Van Norden v. Kliternick,* 178 A.D.2d 167, 577 N.Y.S.2d 27 (1st Dept.1991). In a similar situation involving an auto accident, $250,000 was held appropriate by the appellate court in *Torelli v. City of New York,* 176 A.D.2d 119, 574 N.Y.S.2d 5 (1st Dept.1991); see also *Johnston v. State,* 127 A.D.2d 980, 512 N.Y.S.2d 957 (4th Dept. 1987) ($250,000 award upheld for victim of landslide unsuccessfully calling for help).

Pursuant to paragraph 2 of the parties' agreement and taking all factors into account, I award $50,000 for pain and suffering to plaintiff, to be allocated among Meyers' sisters.

## IX

The clerk is directed to enter final judgment in favor of plaintiff against the United States for $78,600, to be distributed by plaintiff to Meyer's sisters. Jurisdiction is reserved to resolve any disputes concerning such distribution should they arise.

Because of the importance of enhanced attention to reports of unsafe equipment on governmental vessels, a copy of this memorandum order shall be sent to the Secretary of the Navy.

SO ORDERED.

---

2. Concentration on an urgent goal may stimulate release of *endorphins* which suppress sensations of pain. This may permit a person to focus on what must be done with great intensity, undisturbed by pain that would normally be impossible to bear.