OPINION OF THE COURT
Paul A. Victor, J.
Defendant moves to set aside a verdict of the jury which made: (1) an award of $6,000,000 to the estate of Maracallo for the conscious pain and suffering of Daniel Maracallo, decedent (a drowning victim), and (2) an award of $4,000,000 to Maria Maracallo, his mother, with regard to her cause of action for negligent infliction of emotional harm.
Issues Presented
In addition to the traditional postverdict motion to set aside the verdict of the jury for insufficiency and/or as contrary to the weight of the evidence and/or for excessiveness, the defendant raises several other novel legal issues, namely:
1. Does a cause of action exist: (a) for the negligent failure to provide timely information to a parent regarding a deceased or missing child, or (b) for negligence in locating the body of the missing child?
2. May the issue of damages for the alleged negligent infliction of emotional distress be bifurcated for discrete acts and *705 periods of time when the issues are submitted to the jury for determination and evaluation?
Facts
Plaintiffs decedent,[1] Daniel Maracallo, then 14 years old, died by drowning in an amusement park’s wave pool while on an eighth grade school field trip at Dorney Park and Wildwater Kingdom (hereinafter Dorney Park) in Allentown, Pennsylvania. The drowning occurred at approximately 3:30 p.m. on the 15th day of June 1994. The decedent’s teachers, employees of the defendant, admittedly relied entirely upon Dorney Park’s lifeguards and did not personally supervise the pool area or take any other special precautions for pool safety, but instead wandered about Dorney Park while their students were permitted to use the pool area. While the record is not altogether pellucid, there was evidence from which a jury could conclude that Daniel’s friends reported that he had possibly drowned or was in trouble, but that the lifeguards negligently did not observe him, and that they dismissed the students’ pleas in the mistaken belief that Daniel had been rescued when in fact another youth, who coincidentally had also encountered difficulty, had been rescued.
The teachers who were assigned to supervise Daniel in fact failed to learn that the decedent was missing until after everyone left the park which officially closed at 5:00 p.m. At apparently 7:00 p.m. the teachers and the other students left the vicinity of Dorney Park and returned to Bronx County without having found Daniel and without having notified his mother Maria Maracallo that he was missing. Upon returning to the Bronx at approximately 9:00 p.m., the principal and assistant principal notified Maria Maracallo that Daniel was missing. At approximately 1:00 a.m., maintenance personnel at Dorney Park discovered the body of Daniel Maracallo in the wave pool. In the intervening hours, and while decedent’s body lay at the pool’s bottom, the pool had been used by the lifeguards for relay races and other activities.
As to the cause of action for damages for pain and suffering, expert testimony was adduced which was essentially unrefuted, *706 and which if accepted by the jury as true, would establish that Daniel Maracallo likely survived (after finally going under for the second time) for a terror filled period of six to seven minutes during which he was in a conscious state with an awareness of impending death. This period of six to seven terror filled minutes was in addition to, and followed the period of fright and panic which took place as Maracallo, in the words of the expert witness, “came up for air at least once, possibly twice . . . crawling on his friend’s body to get above the surface . . . [during which period he sensed that something horrible was going to happen].” Thereafter, during the six or seven minutes while he was drowning and conscious, he was caught in a wave pool current and his body was violently propelled against a metal intake screen for the filtration system.
For each theory of negligence, the jury was asked to consider the issues of proximate cause as well as apportionment of liability with Dorney Park, and the jury was provided with a very detailed special verdict questionnaire which clearly distinguished each issue and the alleged damages therefor. As to the mother’s cause of action for negligent infliction of emotional distress, the court charged the jury that the plaintiff could recover if, inter aha, the plaintiff established that the defendant was at fault in not taking appropriate action to timely notify plaintiff that Daniel was missing and to locate Daniel’s body. The court went on to explain that the plaintiffs claim for damages encompassed two separate theories of injury each of which involved an apportionment with Dorney Park in discrete ways. The court determined to separately charge these theories and to have the jury delineate the damages in order to preserve a proper record, both for trial and in the event of an appeal. In that regard, the court charged in part as follows:
“In this cause of action plaintiff claims that the failure to provide her with timely accurate information resulted in emotional distress to her in two discrete ways. First she claims that she sustained one form of emotional distress resulting from the period of uncertainty from the time she learned that Daniel Maracallo was missing, until the time she learned that he was in fact dead; and secondly, plaintiff claims that because the body of her son was allowed to lay in the bottom of the pool until it was discovered the following day, she has been caused to suffer additional emotional distress arising out of the recollections by her of this alleged indignity to the body *707 of her deceased son.”
As to damages for the alleged emotional injury, the court charged the jury in accordance with the language of PJI 2:284, as modified:
“If you find that plaintiff Maria Maracallo, in her individual capacity is entitled to recover from the defendant, your verdict must include damages for mental suffering, and all emotional and psychological injury resulting from the emotional distress caused by the wrongful act of the defendant.
“However, you are not to award any damages for the normal grief which [a] parent suffers as a result of the death of a child. The law does not permit recovery of damages arising out of the normal grief associated with the death of a child; and in this law suit, there is no claim by Maria Maracallo to recover any such damages resulting solely from the death of her son Daniel Maracallo. However, the plaintiff is seeking damages for the specific emotional distress which was allegedly caused by the fault of the defendant with respect to the information or lack of timely information that it provided, and with respect to the untimely discovery of Daniel Maracallo’s body. In other words Maria Maracallo can only recover damages for the heightened grief and emotional upset for these alleged wrongs, which is separate and apart from the ordinary grief and emotional upset caused to a parent by the death of a child.”
Argument
On the present motion, defendant argues, first, that plaintiff Maria Maracallo’s claim of negligent infliction of emotional distress should have been dismissed. Defendant contends that, under the facts in this case, no cause of action exists either for negligent transmission of information and/or lack of timely information to the parent regarding a missing child, or for negligent location of the body of a deceased child. The New York City Board of Education (NYCBOE) contends that any duty which might have been involved under the circumstances ran to Daniel Maracallo, and that duty was not transferable to Maria Maracallo. Defendant argues further that prior to the discovery of the body, its employees were not at fault since they provided family members with accurate information, i.e., that Danny was *708 “missing.” In the alternative, NYCBOE argues that the record does not support the amount of damages awarded to Maria Maracallo for emotional distress, and argues further that the bifurcated award of damages for alleged negligent infliction of emotional distress was duplicative and improper. NYCBOE argues lastly that the award of damages for the decedent’s conscious pain and suffering was also excessive.
Law Pertaining to Posttrial Motions
Sufficiency and Weight of the Evidence
The inherent common-law power of the court to set aside a jury verdict has been codified in New York in CPLR 4404 (a). Despite the codification of this long recognized discretionary power of the court to set aside a verdict, it has been stated that the proper standard for setting aside a jury verdict has often been found elusive and “has long defied precise definition” (Nicastro v Park, 113 AD2d 129, 132 [2d Dept 1985]; 3 Blackstone, Commentaries on the Laws of England, ch 24, at 387 [5th ed 1773]). However, as observed in Nicastro, over the years, several principles have emerged which are of assistance to the court “in outlining the parameters of judicial function on such a motion.” (Id.)
It is axiomatic that a jury verdict is entitled to the benefit of every fair and reasonable inference which can be drawn from the evidence, and that it is the function of the jury, not the court, to make credibility determinations. It has often been observed, however, that “whether a jury verdict is against the weight of the evidence is essentially a discretionary and factual determination which is to be distinguished from the question of whether a jury verdict, as a matter of law, is supported by sufficient evidence” (Nicastro v Park, 113 AD2d, supra at 132). In addition, “[although these two inquiries may appear somewhat related, they actually involve very different standards and may well lead to disparate results” (Cohen v Hallmark Cards, 45 NY2d 493, 498 [1978]).
As observed in Cohen (supra), whether a jury verdict is against the weight of the evidence is a factual determination which “involves what is in large part a discretionary balancing of many factors,” whereas “[flor a court to conclude as a matter of law that a juiy verdict is not supported by sufficient evidence . . . requires a harsher and more basic assessment of the jury verdict” (Cohen v Hallmark Cards, 45 NY2d, supra at 499). The latter is a legal determination whereas the former is a factual *709 one. One leads to a final termination of the action, whereas the other results in a new trial.
Minimum Sufficiency for Pain and Suffering Award
“[R] eco very for noneconomic losses such as pain and suffering . . . rests on ‘the legal fiction that money damages can compensate for a victim’s injury’. We accept this fiction, knowing that although money will neither ease the pain nor restore the victim’s abilities, this device is as close as the law can come in its effort to right the wrong” (McDougald v Garber, 73 NY2d 246, 254 [1989] [citation omitted]). However, as also noted in McDougald: “Translating human suffering into dollars and cents involves no mathematical formula; it rests as we have said, on a legal fiction. The figure that emerges is unavoidably distorted by the translation.” (73 NY2d, supra at 257.)
To obtain the “benefit” of this legal fiction the law requires as a “prerequisite to recovery” that the victim of a tort have “cognitive awareness” (McDougald v Barber, supra at 255), and therefore the plaintiff has the “threshold burden of proving consciousness for at least some period of time following an accident in order to justify an award of damages for pain and suffering” (Cummins v County of Onondaga, 84 NY2d 322, 324 [1994]). This burden can be satisfied by direct or circumstantial evidence (Gonzalez v New York City Hous. Auth., 77 NY2d 663 [1991]), but “[m]ere conjecture, surmise or speculation is not enough to sustain a claim for [pain and suffering] damages” (Cummins v County of Onondaga, 84 NY2d, supra at 325; Fiederlein v New York City Health & Hosps. Corp., 56 NY2d 573, 574 [1982]; Walker v New York City Tr. Auth., 130 AD2d 442 [1st Dept 1987]).
Often when unconsciousness or death occurs shortly after a tort, it is difficult, sometimes impossible, to determine if a decedent suffered or was actually conscious of any pain. In those instances, the jury, as well as the reviewing court, must rely upon inferences drawn from sparse circumstances in order to determine the degree of consciousness. (See, e.g., Torelli v City of New York, 176 AD2d 119 [1st Dept 1991]; Coffey v Callichio, 136 AD2d 673 [2d Dept 1988]; Tenczar v Milligan, 47 AD2d 773 [3d Dept 1975]; Jones v Simeone, 112 AD2d 772 [4th Dept 1985].) “In determining damages for conscious pain and suffering experienced in the interval between injury and death, when the interval is relatively short, the degree of consciousness, severity of pain, apprehension of impending death, along with duration, are all elements to be considered” (Regan v Long Is. *710 R.R. Co., 128 AD2d 511, 512 [1st Dept 1987]). Obviously, if death is immediate and the record is barren of any circumstantial evidence of consciousness, a pain and suffering award will not be upheld.
Excessive or Inadequate Damage Awards
The common-law standard for claimed excessiveness or inadequacy at both the trial and appellate levels was that the jury verdict could not be overturned unless the award “is so disproportionate as to shock the conscience of the court.” (See e.g., Grimaldi v Finch, 99 AD2d 920, 922 [3d Dept 1984].) Although by its express terms CPLR 5501 (c) appears to apply only to the Appellate Division, at least three of the departments of the Appellate Division have held that this standard governs trial judges. (Inya v Ide Hyundai, Inc., 209 AD2d 1015 [4th Dept 1994]; Cochetti v Gralow, 192 AD2d 974, 975 [3d Dept 1993]; Shurgan v Tedesco, 179 AD2d 805, 806 [2d Dept 1992]; see also, Donlon v City of New York, 284 AD2d 13 [1st Dept 2001]; Gasperini v Center for Humanities, Inc., 518 US 415 [1996].) Although the First Department has not expressly held that this statutory standard applies at the trial level, the Gasperini decision (supra) was cited with approval by the First Department in Donlon (supra). In view of the overwhelming authority in this area, and because this court, in any event, must follow the consistent views of the other departments of the Appellate Division, this court will apply the CPLR 5501 standard (see, Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984]; People v Shakur, 215 AD2d 184, 185 [1st Dept 1995]).
Other Relevant Damage Awards
The cases dealing with these types of noneconomic awards are either distinguishable, or too few, or too remote in time to provide meaningful guidance as to what would be considered reasonable compensation for the noneconomic damages sustained herein. (But see, Torelli v City of New York, 176 AD2d 119 [1st Dept 1991] [consciousness for at least 15 minutes possibly an hour; jury award of $1,074,000 reduced by trial court to $75,000; increased by Appellate Division to $250,000]; Givens v Rochester City School Dist., 294 AD2d 898 [4th Dept 2002] [stabbing victim lost consciousness within five minutes and died within one hour later; award reduced to $300,000 for decedent’s conscious pain and suffering]; Ramos v La Montana Moving & Stor., 247 AD2d 333, 333 [1st Dept 1998] [an award of $3,000,000 for decedent’s “excruciating crushing injuries” and 15 to 30 minutes of conscious pain and suffering was reduced by *711 the trial court to $250,000; and increased by the Appellate Division to $900,000]; Lubecki v City of New York, 304 AD2d 224 [1st Dept 2003] [an award of $3,000,000 was held not to deviate materially from reasonable compensation in view of the preimpact terror and other injuries sustained by decedent following a shoot-out between the police and perpetrators of a bank robbery]; Dontas v City of New York, 183 AD2d 868 [2d Dept 1992] [an award of $2,000,000 for drowning victim reduced to $50,000]; Duffy v City of New York, 178 AD2d 370 [1st Dept 1991] [emotional harm award reduced from $1,500,000 to $250,000]; Peters v Rome City School Disk, 298 AD2d 864 [4th Dept 2002] [$75,000 for false imprisonment and negligent infliction of emotional distress, not excessive].)
Discussion
As a general rule, no recovery can be had for negligent infliction of emotional distress. If the present plaintiff is permitted to recover such damages in this case, it must be because the case falls into one of the few recognized exceptions to that exacting doctrine.
In Johnson v State of New York (37 NY2d 378 [1975]), the issue was whether the daughter of a hospital patient could recover for emotional harm sustained as a result of negligent misinformation given by the hospital that her mother had died. The Johnson court observed that historically there had evolved two exceptions to the general rule that recovery could not be had for negligent infliction of emotional distress (id. at 381-382):
“The first is the minority rule permitting recovery for emotional harm resulting from negligent transmission by a telegraph company of a message announcing death.
“The second exception permits recovery for emotional harm to a close relative resulting from negligent mishandling of a corpse. Recovery in these cases has ostensibly been grounded on a violation of the relative’s quasi-property right in the body. It has been noted, however, that in this context such a ‘property right’ is little more than a fiction; in reality the personal feelings of the survivors are being protected.” (Citations omitted and emphasis added.)
The Court in Johnson concluded that the hospital was negligent in failing to ascertain the proper next of kin when it mistakenly transmitted the death notice.
*712 Building upon this exception, the Court of Appeals in Lando permitted the recovery of damages for mental anguish by a father whose daughter disappeared from a state hospital, and whose body was found 11 days later in a wooded area only 50 feet from the hospital parking lot. The Court found that the defendant negligently failed to undertake careful and diligent search of hospital premises in order to locate the deceased, and that the plaintiff was consequently entitled to damages for the mental anguish he suffered when he was denied access to and control over the body of his deceased daughter for a period of 11 days. (Lando v State of New York, 39 NY2d 803 [1976].)
Similarly, in Smith v St. Joseph’s Hosp. (210 AD2d 36 [1st Dept 1994]), the failure to notify a wife of her husband’s hospitalization and subsequent death constituted a viable cause of action. In that case, the hospital misidentified the decedent as a psychiatric patient, involuntarily confined him, and did not discover its error until after the death of the decedent.
Defendant NYCBOE contends that the plaintiff Maria Maracallo did not and cannot establish a cause of action for negligent infliction of emotional distress. Defendant argues that the decision in Lando (supra) can be distinguished on the ground that in Lando, the deceased’s body was located on the grounds of the psychiatric hospital, whereas in the present case, the NYCBOE argues, it had no ability to control the events subsequent to the drowning.
The defendant fails to recognize that its duty to the deceased was a continuing duty. In postulating that the NYCBOE had no ability to conduct a further search after Dorney Park officially closed, the NYCBOE ignores what a parent would have done under similar circumstances. In other words, the fact that the NYCBOE “delegated” its duty to locate Daniel to Dorney Park does not change the circumstance that the NYCBOE had the duty to act in the place of a reasonable parent. In the first instance, no reasonable parent would have left the park without the child, and no reasonable parent, even if barred from access to the park, would have left the area until the missing child was located. At the very least a reasonable parent would have insisted upon the assistance of local authorities to gain access to the park and for a search thereof. The decision in Lando is controlling here, and plaintiff may properly recover damages for emotional distress.
Damages for Emotional Distress
At the outset, defendant claims that the court permitted a “double” recovery for emotional distress. This claim is rejected, *713 as it is clear to the court that the jury was painstakingly charged not to award damages for the same claim in response to different questions on the special verdict sheet. The court was constrained to request that damages be “bifurcated” since plaintiff had made distinct claims for damages, and the alleged apportionment of fault was different for each said claim. As the court charged the jury, “she [plaintiff Maria Maracallo] claims that she sustained one form of emotional distress resulting from the period of uncertainty from the time she learned that Daniel Maracallo was missing, until the time she learned that he was in fact dead; and secondly, plaintiff claims that because of the disrespect to the body of her son, which was carelessly caused to lay in the bottom of the pool while ‘lifeguards’ frolicked above, she was caused to suffer additional emotional distress arising out of the continuing recollections by her of this alleged indignity to the body of her deceased son.”
Obviously, the duty of the defendant and Dorney Park, and their alleged fault during each of these discrete periods was quite different. Bifurcation allowed the jury not only to assess the damages for each distinct period but also to apportion the relative alleged fault of each entity in each period. It was the intention of this court to have the jury delineate which damages and fault related to these two distinct time periods, not only to be able to determine if the quantum of damages and apportionment were appropriate on a posttrial motion, but to preserve for appellate review a record of the jury’s deliberations in the event either of these two particular claims were found to be legally untenable or insufficient. This court does not believe that the jury could have mistakenly confounded an award of damages for each of the distinct time frames (i.e., the emotional injury during the period of uncertainty ending with knowledge of the decedent’s death vis-a-vis the emotional distress occasioned by her recollections of mishandling of the body after she learned of his death). Each of these issues was carefully explicated and delineated as separate and distinct elements of damages in the court’s charge and on the special verdict sheet. The jury apportioned fault with respect to the first period of time 85% against the defendant NYCBOE and 15% against Dorney Park, whereas with respect to negligence in locating the body, they attributed fault 30% against defendant NYCBOE and 70% against Dorney Park. The jury evidently found that the NYCBOE was in a better position to keep track of its wards, *714 while Dorney Park was in a better position to search the waters and grounds of its own park premises.[2]
The court notes, with respect to the first period of time, that the emotional upset suffered by plaintiff Maria Maracallo, although measured in hours, must have seemed an eternity before she learned the horrible fate of her son. As to the second period of time, while it may be difficult for a jury to determine what part of the grief and emotional shock suffered by the plaintiff was due to the negligent mishandling of decedent’s body, and what part is attributable to the noncompensable grief arising out of the loss of the child, it is clear that such an analysis must be undertaken in every case in which such recovery is properly allowed. The arduous task assigned to the jury was that of distinguishing between the normal grief, in itself implacable, associated with the loss of a child, and the emotional trauma arising from the knowledge that her son’s frail and lifeless body lay buffeted by the currents of the pool as pleasure seekers and even those entrusted with his safety frolicked in the waves. Neither the enormity or difficulty of the task, nor the impossibility of constructing a mechanism to measure with metaphysical certainty the shock to the plaintiffs system, constitutes a basis to deprive the plaintiff of a recovery when the elements of the cause of action have been satisfied by the trial evidence.
The court notes, in addition, that the lack of evidence of psychiatric treatment, while relevant perhaps as to the amount of the recovery, is not a sine qua non in a case seeking damages for negligent infliction of emotional distress. In a recent case in which the defendant sought dismissal of a cause of action seeking damages for negligent infliction of emotional distress involving the mishandling of a corpse, the court noted:
“Moreover, the fact that Anthony J. Massaro has not sought any medical treatment or psychological counseling for his alleged injuries, while relevant to the issue of damages, does not necessarily preclude his recovery. In a case such as this, ‘there exists “an *715 especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious” ’ (Johnson v State of New York, 37 NY2d 378, 382 [1975], quoting Prosser, Torts § 54, at 330 [4th ed]).” (Massaro v O’Shea Funeral Home, 292 AD2d 349, 351 [2d Dept 2002].)
Hence, while it is clear to the court that plaintiff was entitled to an award of damages, it is equally clear that the damages which were awarded were excessive. (See, Duffy v City of New York, supra [1st Dept 1991] [damages for emotional distress arising out of the negligent withholding of news of a son’s death for 18 months, reduced from $1,500,000 to $250,000].)
The court concludes that for the first period of emotional harm $500,000 represents just and fair compensation, and that for the period following that time, $250,000 would be just and fair compensation.
Damages for Conscious Pain and Suffering
In this proceeding the jury awarded $6,000,000 for conscious pain and suffering and apportioned fault 50% against NYCBOE, 2% against decedent, and 48% against Dorney Park. It is evident that plaintiff adduced sufficient evidence from which the jury could conclude that the decedent suffered a most terrible and prolonged demise over a period of approximately six minutes, during which he suffered physical pain, terror, and knowledge of his impending death. As noted above, the degree of consciousness, severity of pain, and duration of apprehension of impending death are all key elements to be considered. Although the City relies on the case of Dontas v City of New York (supra at 869 [verdict as to damages for conscious pain and suffering in favor of a 16-year-old boy who drowned was reduced from $2,000,000 to $50,000]), it was observed by the Second Department in that case that the courts were limited by the testimony of the “experts from both sides [which] indicated that a drowning victim would lose consciousness in just a few minutes.” Even apart from the terror filled period prior to going under for the last time, the evidence in this case supports a conclusion that plaintiff was conscious for a longer period of time, during which he was engaged in a death struggle to extricate himself from currents which buffeted his body and which undoubtedly terrified him and gave him a keen awareness of impending death. It is important to note that in many of the wrongful death/preimpact terror cases, which have upheld and sustained *716 significant awards of damages for minimal conscious pain and suffering, the preimpact terror was measured in seconds, whereas in the case under consideration the preimpact terror and awareness of death are measured in multiple minutes. The court concludes that reasonable compensation for this horrible experience, and the conscience pain and suffering endured thereby, should not be less than $2,000,000.
Conclusion
The motion to set aside the verdict and for a new trial is granted only to the extent of ordering a new trial on the issue of damages unless plaintiff stipulates with regard to either or both causes of action to accept a reduction in the jury’s award of damages to the sum of $2,000,000 as to the cause of action for pain and suffering; and to the sum of $750,000 as to the cause of action for negligent infliction of emotional harm, bifurcated however, as follows: $500,000 for the first period of emotional harm, and $250,000 for the second period of emotional harm. Said reduced awards are subject to appropriate apportionment of fault in accordance with the jury’s findings. Said stipulation^) in her individual and/or representative capacity shall be filed by plaintiff within 30 days of service of a copy of this order with notice of entry. The motion in all other respects is denied. The parties are directed to select a mutually convenient date for a hearing pursuant to CPLR 4533-b, and for such other matters as may relate to the entry of judgment herein.
[Portions of opinion omitted for purposes of publication.]

. In actuality there are two plaintiffs, i.e., Maria Maracallo in her representative capacity, as administratrix of the estate of decedent with regard to the cause of action for pain and suffering, and Maria Maracallo, individually, with regard to her personal cause of action for negligent infliction of emotional harm. In this writing the word plaintiff shall be used genetically unless the context indicates otherwise.

. In McDougald v Garber (73 NY2d 246, 256 [1989]), the Court of Appeals held that it was impermissible, in assessing nonpecuniary damages, to “segregate the suffering associated with physical pain from the mental anguish [i.e., loss of enjoyment of life] that stems from the inability to engage in certain activities, and to have juries provide a separate award for each.” That type of calculus, which threatens an inflated recovery, is not at issue here; this case does not present any real danger of a duplicative award, in view of the different time frames involved in the calculation of damages for negligent infliction of emotional distress.