■ ERNEST G. ROUNTREE, Respondent, v MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Appellant. [692 NYS2d 13] —Judgment, Supreme Court, Bronx County (Bertram Katz, J., and a jury), entered May 13, 1998, awarding plaintiff damages of $450,000 for past pain and suffering and $300,000 for future pain and suffering, upon plaintiff's stipulation to reduce the jury's award from $850,000 for past pain and suffering and $650,000 for future pain and suffering, unanimously affirmed, without costs.

At about 5:45 P.M. on February 16, 1993, the 49-year-old plaintiff boarded a BX-41 bus owned and operated by defen-

dant. According to plaintiff, the bus abruptly pulled away from the curb as he was walking towards the back in search of a seat. While walking, plaintiff glided his hand along the handrail. Plaintiff and another passenger, Esther Sanchez, both testified that seconds after pulling away from the curb, the bus came to a sudden, violent stop. Plaintiff lost his grip on the handrail and flew backwards about 20 feet before falling to the floor of the bus. He hit the floor with his right hip, shoulder and back.

Esther Sanchez helped plaintiff to rise and convinced the driver to pull over and call for help. EMS transported plaintiff to Jacobi Hospital Emergency Room, where he was treated and released the same day. Ms. Sanchez did not smell alcohol on plaintiff's breath nor did he seem intoxicated to her. The ambulance call report and the hospital records similarly fail to mention alcohol on plaintiff's breath or any other indicia of drunkenness and describe plaintiff's mental state as "alert".

The driver claimed that he never stopped the bus between the time plaintiff boarded the bus and the accident. The driver's deposition testimony, which was read to the jury, stated that after plaintiff got on, the bus proceeded at 5 to 10 miles per hour into moderate traffic, then slowed slightly. He could not remember whether there were any vehicles in front of the bus just before the alleged stop. Moreover, though he did not mention this in the incident report he filled out just after the accident, the driver testified that plaintiff had alcohol on his breath and seemed incoherent from alcohol or drugs. He also claimed that the dispatcher (another employee of defendant, who did not testify) had agreed with him that plaintiff's breath smelled of alcohol.

Due to his injuries, plaintiff missed two months of work, and was thereafter reassigned to a desk job, because he could no longer perform his duties as a cardio-pulmonary technician. After several months of physical therapy, he obtained a neuro-surgical evaluation and discovered that he had a herniated cervical disc. Despite two more years of physical therapy, he had constant disabling neck pain, which required surgery to remove a ruptured disc from his neck. At the time of trial, four and a half years after the accident, he still had neck pain and a limited range of motion. His expert believed that plaintiff would eventually develop traumatic arthritis from this injury. Defendant's experts disputed whether the accident had caused the hernia. After a 15-minute examination, defendant's neurologist concluded that plaintiff could have continued to perform his former job.

In its charge, the court instructed the jury on the general principles of negligence and also on the doctrine of res ipsa loquitur. The court denied defendant's request for a comparative negligence charge, but as part of the res ipsa loquitur charge, the court advised the jury that plaintiff was expected to use reasonable care for his own safety. The jury returned a unanimous verdict for plaintiff and awarded damages which were reduced by the court as noted above.

On appeal, defendant argues that the trial court erred in submitting the case to the jury on a res ipsa loquitur theory; that a comparative negligence charge was warranted; and that the damages should be reduced still further. These contentions are without merit.

The doctrine of res ipsa loquitur describes the conditions under which an inference of negligence may be drawn from the very occurrence of an accident and the defendant's relation to it (*Pavon v Rudin*, 254 AD2d 153). The plaintiff must establish: (1) this type of accident ordinarily does not occur in the absence of negligence; (2) the instrumentality causing the accident was in defendant's exclusive control; and (3) the accident was not due to any voluntary action or contribution by plaintiff (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226). If these requirements are met, a plaintiff may rest his case on circumstantial evidence, when the specific cause of the accident is unknown (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494).

Defendant claims that plaintiff did not satisfy the first two elements of the test. According to defendant, vehicles in New York City traffic often make sudden stops in response to traffic conditions. Therefore, it cannot be said that a sudden stop by a bus is the type of event that generally only occurs when the driver is negligent. We rejected this position in *Harris v Manhattan & Bronx Surface Tr. Operating Auth.* (138 AD2d 56, 61 [reversing grant of summary judgment to defendant where plaintiff claimed that speeding bus made an abrupt, violent stop, flinging her forward into a railing and breaking her ribs]). While sudden jerks and jolts in the movement of public conveyances are among the normal incidents of travel, there is a point at which such movements are so unusually forceful that they give rise to a presumption of negligence, which defendant must rebut (*Harris v Manhattan & Bronx Surface Tr. Operating Auth.*, *supra*, at 58). "[R]ecovery may be had by the plaintiff if the movement of the vehicle is unusual or violent" (*Harris v Manhattan & Bronx Surface Tr. Operating Auth.*, *supra*, at 58). Here, plaintiff's corroborated statement that the

bus made a sudden stop, combined with his testimony that the stop was forceful enough to throw him 20 feet across the bus, justified submitting this issue to the jury (*Miller v Inter City Transp. Co.*, 31 Misc 2d 777, 779).

Defendant makes the related argument that the bus could not have been under the driver's exclusive control because buses are forced to make sudden stops due to road conditions and traffic. Even were this a correct statement of the law, it would not benefit this defendant. The driver could not recall anything about traffic and road conditions that would have necessitated a stop at the time of the incident, and in fact denied that he had stopped the bus at all.

In any case, the exclusive control rule is applicable here. Exclusive control is not an inflexible or absolute requirement. Its purpose is to confine application of res ipsa loquitur to situations where it is more likely than not that defendant caused the accident. Plaintiff need not exclude every other possible cause (*Nesbit v New York City Tr. Auth.*, 170 AD2d 92, 98).

Notwithstanding a bus driver's need to respond to conditions not of his making, the issue of exclusive control has not barred courts from applying res ipsa loquitur when a passenger is allegedly injured by an unusually abrupt stop (*Miller v Inter City Transp. Co.*, 31 Misc 2d 777, 780, *supra* [passenger thrown to floor]; *Schulz v Finn*, 273 App Div 780, 781 [passenger jolted in seat]) or by the manner in which the bus was driven (*Horowitz v Kevah Konner, Inc.*, 67 AD2d 38, 39-40 [speeding bus swerved out of lane and overturned]).

The trial court properly refused to give a comparative negligence charge, as the evidence did not support it. Although comparative negligence is usually a jury question, the court may decide the issue as a matter of law if no valid line of reasoning can be drawn from the evidence at trial which could rationally lead to a finding that plaintiff was negligent (*Baginski v New York Tel. Co.*, 130 AD2d 362, 365).

"In order to submit the issue of intoxication to the jury, it is not sufficient that there be merely some evidence that the plaintiff had been drinking, or that there was ' "alcohol on breath" ' " (*Sanchez v Manhattan & Bronx Surface Tr. Operating Auth.*, 203 AD2d 128). In *Sanchez*, we declined to submit the issue to the jury where the plaintiff denied ingesting alcohol, and the emergency room physician and various witnesses noted alcohol on plaintiff's breath but did not observe any erratic or drunken behavior (*supra*, at 128-129).

Here, there was even less evidence of intoxication. The claim that plaintiff had alcohol on his breath was derived entirely

from the testimony of defendant's employee, an interested witness, and the hearsay statement of another such employee. It was not supported by the medical records.

As for defendant's other argument that plaintiff was negligent in not gripping the handrail more tightly, we reject this as illogical. Clearly, there is a limit to how tightly one can hold the railing if one is trying to walk towards a seat, rather than remaining immobile. A plaintiff is only expected to exercise ordinary care for his own safety, particularly when he has no reason to believe he is in any danger (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 517).

As a result of the accident, plaintiff sustained a herniated disc at C5-C6, with cervical pain and right shoulder radiculopathy, numbness and tingling in the right hand. He was disabled for several months and lost the ability to perform his former job. Despite surgery and extensive physical therapy, he has permanent pain and loss of mobility. The damages awarded did not deviate materially from what is reasonable compensation under the circumstances. For example, in *Gonzalez v Rosenberg* (247 AD2d 337), we sustained an award of $750,000 for past pain and suffering and $750,000 for future pain and suffering, where the plaintiff's herniated disc required several operations and left him with permanent pain and "limitations on [his] once active life" (*compare, Adams v Romero*, 227 AD2d 292, 293 [reducing award totaling $750,000 for past and future pain and suffering to $450,000, where plaintiff had herniated discs and limited range of neck movement, but no mention of surgery]). Concur—Rosenberger, J. P., Nardelli, Tom and Andrias, JJ.