[727 NYS2d 94]

WILLIAM DONLON, Respondent, v CITY OF NEW YORK et al., Appellants.

First Department, June 28, 2001

**APPEARANCES OF COUNSEL**

*Edward J. Guardaro, Jr.*, of counsel (*Kitson, Kitson & Bisesto*, attorneys), for respondent.

*Kathleen Alberton* of counsel (*Larry A. Sonnenshein* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellants.

**OPINION OF THE COURT**

Per Curiam.

This is an appeal from a money judgment based upon a jury verdict awarding plaintiff damages for past and future pain and suffering. The defendant contends that the award is excessive. This requires our review pursuant to CPLR 5501 (c). The issue is whether the award is excessive in that it deviates materially from what would be reasonable compensation. For the reasons set forth below we find that the award for future pain and suffering is excessive in that it deviates materially from what would be reasonable compensation and should be reduced by 20% to $400,000.

CPLR 5501 (c), as amended by Laws of 1986 (ch 682, § 10), one of many tort reform innovations added in the mid-1980s, requires that:

> "In reviewing a money judgment in an action in which an itemized verdict is required by rule forty-one hundred eleven of this chapter in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award, the appellate division shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation."

CPLR 5522 (b) requires that we identify the reasons for our decision. This case, as briefed and argued by the parties, involves the future pain and suffering award to a man in his thirties who fell 25 feet, fractured two vertebrae, recovered and returned without any restrictions to his former employment which requires regular sudden and sustained physical exertion including heavy lifting. Our review does not involve plaintiff's economic losses and does not involve the jury's award for past pain and suffering. The legislative scheme, fashioned as a remedy for an insurance crisis marked by spiraling costs and unavailability of liability coverage, requires that we look to similar appealed verdicts and exercise our judgment to promote greater stability in the tort system and greater fairness for similarly situated defendants (Exec Mem in Support of L 1986,

ch 682, 1986 McKinney's Session Laws of NY at 3184; *see generally Gasperini v Center for Humanities*, 518 US 415, 422-425; Thomas Newman, New York Appellate Practice § 4.10). The 1986 tort reforms were occasioned by an insurance crisis, a main determinant of which was the "laws and doctrines governing civil liability for money damages in New York State" (Hugh R. Jones, *Insuring Our Future—Report of the Governor's Advisory Commission on Liability Insurance,* Apr. 7, 1986 at 39). The Jones Commission Report (on which the legislative reforms were based) focused on pain and suffering awards as a driving force behind the "cost surge" which threatened the ability to obtain insurance coverage and posed a threat to self-insured municipal corporations (*Insuring Our Future* at 137-152). The Jones Commission recommended a $250,000 cap on non-economic damages against municipal corporations due to inherent problems with jury determinations of reasonable compensation:

> "All of us are moved by the pain and anxiety that most people who suffer more than minor injuries go through. Our natural tendency is to want to help. Inasmuch as there is no objective way to value these harms, our inclination is to err on the high side. Over time, this tendency gathers its own momentum, a momentum which has no natural curbing force. Particularly in an era where the existence of insurance is commonly assumed, so that the defendant is not expected to bear most of the loss, the urge to provide the most assistance possible becomes nearly irresistible." (*Insuring Our Future* at 85).

Although the Legislature ultimately rejected the Jones Commission recommendation to impose a $250,000 cap on non-economic damages in personal injury awards against municipal corporations, CPLR 5501 (c) was adopted as a reform to the former "shock the conscience" appellate review of damage awards. The "natural curbing force" to check the upward spiral of non-economic jury awards is the review which we are charged to perform by CPLR 5501 (c).

The method of that review is to evaluate whether the appealed award deviates materially from comparable awards. Such a method cannot, due to the inherently subjective nature of non-economic awards, be expected to produce mathematically precise results, much less a per diem pain and suffering rate. Our task necessarily involves identification of relevant factual similarities and the application of reasoned judgment.

Appellate review under CPLR 5501 (c) has also, alternatively, determined "reasonableness" by whether or not the jury's decision is in any way supported by record evidence (*Simeon v Urrey*, 278 AD2d 624; *Rodriguez v City of New York*, 191 AD2d 420). The 1986 amendment to CPLR 5501 (c) replaced the prior "shocks the conscience" review (*Harvey v Mazal Am. Partners*, 79 NY2d 218, 225). This new standard "in design and operation, influences outcomes by tightening the range of tolerable awards." (*Gasperini v Center for Humanities*, 518 US 415, 425.) For more than a decade appellate review has been performed by analogizing an appealed case with relevant precedent and "tightening the range" to accomplish the purposes of the 1986 reform. The present appeal involves case comparison reasonableness.

While the dissent characterizes appellate court comparison of cases as a "tenuous endeavor," analysis of appealed verdicts using CPLR 5501 (c) is not optional but a legislative mandate. Case comparison cannot be expected to depend upon perfect factual identity. More often, analogous cases will be useful as benchmarks. Perceived difficulties in the application of a legal standard, while they may suggest a need for the Legislature to consider reform or repeal, cannot provide a basis for judicial nullification of the current law. Review of jury verdicts often involves questions of fact on which the trier of fact is afforded deference; the issue of material deviation, however, is a mixed question of law and fact which has been legislatively committed to judicial oversight. (*See* NY Const, art VI, § 30; *Cohn v Borchard Affiliations*, 25 NY2d 237.) The dissent casts this appealed future pain and suffering verdict as a question of fact. No jury can determine the issue of material deviation and we cannot, consistent with CPLR 5501 (c), attempt to use the rationale of deference to a jury verdict in resolving that issue when we are supposed to compare analogous verdicts. While we agree with plaintiff that the jury verdict does not deviate materially with respect to the amount awarded as compensation for past pain and suffering ($400,000), we find that the award for future pain and suffering ($500,000) deviates materially from what is reasonable compensation and should be reduced by 20% to $400,000.

William Donlon is a New York City firefighter who sustained serious injuries to his back in October 1992 when he fell 25 feet through a hole in the firehouse second floor where the sliding pole was situated. Plaintiff's injuries of two fractured lumbar vertebrae and a herniation of a third vertebra resulted

in hospitalization for eight days and a three-month return to his mother's home, where he received assistance for most activities of daily living. Treatment for his injuries ranged from the administration of pain medication during his hospital stay to the wearing of a corset for six months. At the end of six months, plaintiff returned to part-time duty which consisted of security and clerical work. While no longer on prescribed medication, plaintiff attended a rehabilitation center twice a week where he engaged in physical therapy. As a result of plaintiff's singular determination to pursue his career as a firefighter, he returned to full-time duty slightly more than a year after his fall.

Between his November 1993 return to work and the December 1999 jury verdict in this action, plaintiff received no medical treatment for his injuries, was unrestricted in performing his work responsibilities, which include entering burning buildings and carrying individuals to safety, took no prescription medications for persisting pain and planned no further medical intervention to correct any remaining physical problems caused by his injuries. Although plaintiff's consultative specialist testified, he never explained the patent contradiction between plaintiff's self-described pain and the foregoing undisputed facts of his recovery.

The contrast between the pain experienced by plaintiff during the year immediately following his tragic fall and the future pain and suffering anticipated by plaintiff despite his unrestricted return to work based on his condition at the time of trial draws attention to the greater award made for future pain and suffering. Dr. Weintraub, a board-certified neurologist, testified that plaintiff sustained his injuries as a result of an "enormous amount of force" when he fell down the pole hole and there can be no doubt that during the time immediately after his fractures, plaintiff suffered excruciating pain. Plaintiff was then faced with a year-long ordeal to recover his abilities to take care of his own personal needs and to resume gainful employment. Due in no small part to his own commitment to firefighting, plaintiff made an almost complete recovery. While the dissent has chosen to dwell on the original, now healed, fractures and characterize plaintiff as suffering substantial and ongoing limitations, the record documents a near-complete rehabilitation.

Although he had equipped himself to handle the less physically challenging work of driving a fire truck, plaintiff returned to his former position in which the safety and lives of the pub-

lic and fellow firefighters depend on plaintiff's strength, mobility and agility. There are suggestions in the record that plaintiff's reach for his strenuous work may have exceeded his grasp—that plaintiff concealed or underplayed his persisting physical impairments so that the Fire Department physicians would allow him to return to the only employment he wanted. There is, however, no medical evidence whatsoever which would support a conclusion that there has been any limitation on his physical abilities to serve as a firefighter. Dr. Weintraub, the specialist consulted by plaintiff to assist in preparation for this litigation, agreed that he could perform his work with no limitations. The record evidence appears to support plaintiff's claim for future pain and suffering insofar as plaintiff has to engage in daily stretching exercises, is no longer able to participate in certain sports activities and is likely to develop traumatic arthritis.

Review of damage awards involves the use of two distinctly different standards. One analysis, not relevant here although relied upon by the dissent, focuses on whether or not the verdict is supported by the evidence (*Simeon v Urrey*, 278 AD2d 624; *Campbell v City of Elmira*, 198 AD2d 736, *affd* 84 NY2d 505; *Baker v Turner Constr. Co.*, 200 AD2d 525, 526, *lv denied* 83 NY2d 755). Another line of inquiry, the review explicitly mandated by CPLR 5501 (c) and upon which the arguments in this case have been based, requires us to determine what awards have been previously approved on appellate review and decide whether the instant award falls within those boundaries (*Osiecki v Olympic Regional Dev. Auth.*, 256 AD2d 998; *Adams v Romero*, 227 AD2d 292; *see also, Harvey v Mazal Am. Partners*, 79 NY2d 218, 225; *Dauria v City of New York*, 178 AD2d 289, *lv denied* 80 NY2d 751).

While CPLR 5501 (c) review has of course been used as a control on "runaway juries" (*see, e.g., Small v New York City Tr. Auth.*, 225 AD2d 471; *Kirschhoffer v Van Dyke*, 173 AD2d 7; *Merrill v Albany Med. Ctr. Hosp.*, 126 AD2d 66, *appeal dismissed* 71 NY2d 990), the vast bulk of decisions have involved fractional reductions as a by-product of greater scrutiny in a legislatively mandated attempt to keep compensation reasonable and uniform (*see, e.g., Djelosaj v Gaines Serv. Leasing Corp.*, 237 AD2d 223; *Pfeifer v Musiker Student Tours*, 280 AD2d 266; *Hull v Board of Educ.*, 226 AD2d 318, *lv denied* 88 NY2d 814; *Cagney v Blaikie*, 219 AD2d 483). With explanation wanting, the dissent effectively repudiates the legislatively mandated method of analysis as well as more than a decade of

Appellate Division decisions which have routinely used case comparison analysis. While the dissent finds precedent of little use due to the "scant summary factual recitations in prior decisions," CPLR 5501 (c) requires us to develop standards for material deviation as a by-product of our review of appealed verdicts. If, for example, case comparison demonstrates that individuals with similar injuries but without the ability to return to work have received smaller awards, the appealed award deviates materially. Other factors which may affect the reasonableness of an award include the need for future surgery as well as the nature and severity of subjective pain.

Plaintiff's award for past pain and suffering is amply supported by evidence showing the considerable pain and debilitation that plaintiff suffered (*cf. Sookraj v Schindler El. Corp.*, 279 AD2d 371 [elevator fell eight floors, herniated and bulging disks, surgery required, past pain award reduced to $350,000]; *Rountree v Manhattan & Bronx Surface Tr. Operating Auth.*, 261 AD2d 324, 328, *lv denied* 94 NY2d 754 [herniated disk, disabled for months, unable to return to former work, past pain award reduced to $450,000]).

Plaintiff's future pain and suffering, by contrast, pales in comparison with his vertebra fractures, need for substantial pain medications, inability to reside independently and need for a corset which he experienced in the year before his return to full-time work. He testified to constant, dull pain which is capable of being alleviated through the infrequent use of over-the-counter medications and which has not impaired his ability to shoulder the requirements of working as a firefighter. Plaintiff's pain does not require him to use a back brace, a TENS unit or narcotic medication (*Pares v LaPrade* [appeal No. 2.], 266 AD2d 852); nor is the pain unremitting (*Sharrow v Dick Corp.*, 204 AD2d 966, 967, *appeal dismissed in part* 84 NY2d 976, *revd on other grounds* 86 NY2d 54). Plaintiff has not been reduced to performing sedentary chores (*Piehnik v Graff*, 158 AD2d 863, 864).

Plaintiff testified that he never made a single complaint of pain to a Fire Department doctor, had not been taking medications for his pain, had not used a back brace for years, had not been advised by a physician to use medication or wear a back brace for years, and was not restricted in his employment in any way. Other than subjective complaints of pain and self-imposed restrictions on sports activities echoed by his consultative specialist, plaintiff has returned without any restrictions to his extremely strenuous employment upon which the safety

of individuals depends. We disagree with the suggestion of the dissent that plaintiff has not substantially recovered. We also disagree with the dissent's deeming as irrelevant those lesser awards for individuals unable to return to less demanding work. Our logic is simple and straightforward. Other plaintiffs, unable to return to work, have received lesser compensation for analogous injuries. Under CPLR 5501 (c) plaintiff's verdict is unreasonable since it deviates materially. Plaintiff's return to his demanding work duties, despite his continuing, constant pain, requires us to find that the award for future pain and suffering deviates materially from what is reasonable compensation under the circumstances (*Sassoonian v City of New York*, 261 AD2d 319; *see also Po Yee So v Wing Tat Realty*, 259 AD2d 373; *Gonzalez v Lovett Assocs.*, 252 AD2d 355, *lv denied* 92 NY2d 816). In analogous cases involving spinal injuries, permanent pain and a loss of mobility, reasonable compensation has been found to be substantially less than that awarded by this jury even when those claimants were unable to return to work or manifested more serious pain (*Rountree v Manhattan & Bronx Surface Tr. Operating Auth.*, 261 AD2d 324, 328, *lv denied* 94 NY2d 754 [$300,000]; *Adams v Romero*, 227 AD2d 292 [$450,000 for past and future pain]; *Brown v Stark*, 205 AD2d 725 [$300,000 for past and future pain]; *Orris v West*, 189 AD2d 866 [$350,000 for past and future pain]). Unlike those claimants, plaintiff has returned to his former employment and performed his duties for years without limitation, does not require any surgery to correct whatever lasting effects of the accident remain and does not have the type of pain requiring ongoing recourse to medication.

Accordingly, the judgment of Supreme Court, Bronx County (Janice Bowman, J., and a jury), entered December 21, 1999, awarding plaintiff damages, before structuring, of $400,000 and $500,000 for past and future pain and suffering, respectively, should be modified, on the facts, to remand for a new trial on the issue of damages for future pain and suffering only, and otherwise affirmed, without costs, unless, within 30 days of service of a copy of this order with notice of entry, plaintiff stipulates to reduce the award for future pain and suffering to $400,000 and to entry of an amended judgment in accordance therewith.

MAZZARELLI, J. (dissenting). I am compelled to disagree with the majority's determination to reduce the jury's award for future pain and suffering to this permanently disabled firefighter from $500,000 to $400,000. It is generally accepted that

a personal injury damage award is a question of fact for the jury, which is in the unique position of being able to assess the plaintiff, his injuries, and his credibility (*Rodriguez v City of New York*, 191 AD2d 420).

> "Although possessing the power to set aside an excessive jury verdict [here, pursuant to CPLR 5501 (c)], a [court] should nonetheless be wary of substituting its judgment for that of a panel of fact finders whose peculiar function is the fixation of damages. Modification of damages, which is a speculative endeavor, cannot be based upon case precedent alone, because comparison of injuries in different cases is virtually impossible" (*Po Yee So v Wing Tat Realty*, 259 AD2d 373, 374).

Comparison of cases is an even more tenuous endeavor for an appellate court because we are constrained to rely on what are often scant summary factual recitations in prior decisions.

I do not disagree that CPLR 5501 (c) requires our review of whether an award "deviates from reasonable compensation." However, upon review, I find no basis for reduction of this jury's award. The facts to be considered by this Court in reviewing a future pain and suffering award are identical to those considered by the jury in reaching its verdict, including the nature of the injury suffered and plaintiff's prognosis over time; the age of the plaintiff at the time of the verdict; and, whether surgery will be required, or recommended to lessen plaintiff's symptoms. The probative value of other cases to an appellate court considering whether there has been a "material deviation from reasonable compensation" is limited to the factual similarities to be drawn therefrom. Additionally, to properly compare awards, an appellate court must also consider the date prior decisions were rendered. In some cases, a plaintiff's ability to return to work may indicate diminished pain. However, in this case the plaintiff's employment status was before the jurors, and they considered it in reaching their verdict. There is no rule requiring reduction of an otherwise reasonable pain and suffering award on the sole basis that plaintiff has returned to work.

Here the jury awarded plaintiff, who was 31 years old at the time of the accident, $500,000 for the future pain he would suffer as a result of fractures of two lumbar vertebrae at the L1-2, L2 junction, and a herniation of a third vertebra at L5-S1. This injury occurred while plaintiff was responding to a fire alarm.

Based upon actuarial projections accepted by the jury, plaintiff's life expectancy at the time of the verdict was 37.8 years. Thus the jury awarded plaintiff $500,000, or $13,227.51 per year for future pain and suffering. There is no logical basis to conclude that $400,000 rather than $500,000 is the correct amount to compensate the plaintiff for his future pain and suffering. Nor has the majority explained how $10,582.01 per year, rather than $13,227.51 per year, is more appropriate for what the majority acknowledges is the plaintiff's "continuing, constant pain."

To justify reducing the future pain and suffering award ($500,000), the majority contrasts it to the jury's award for past pain and suffering ($400,000), concluding that because plaintiff's current injuries "pale" in comparison to the pain and suffering that plaintiff endured between the time of the accident and the time of the verdict, the future pain and suffering award was excessive. The significance of this comparison is unclear, because the award for past pain and suffering was based upon known facts, i.e., plaintiff's injuries and the course of plaintiff's treatment in the six years between the time of the accident and the time of the verdict. The award for future pain and suffering, however, requires the jury to assign a value to the suffering plaintiff will endure as a result of the progression of his degenerative condition for an additional 37.8 years.

Most of the cases cited in the majority's decision in support of reducing the future pain and suffering award contain no information about the age of the plaintiff at the time of the accident, nor do they specifically discuss the value of expected future impairments accompanying degenerative conditions (*see*, *Adams v Romero*, 227 AD2d 292 [1996 award of $450,000 for past and future pain and suffering to a plaintiff of unknown age who suffered two herniated discs with restriction in the mobility of his neck]; *Brown v Stark*, 205 AD2d 725 [1994 award of $300,000 for unspecified compensation to plaintiff of unknown age who suffered one herniated disc and switched from full to part-time employment]; *Orris v West*, 189 AD2d 866 [1993 award of $350,000 for unspecified compensation to plaintiff of unknown age who suffered a herniated and a bulging disc, requiring surgery, who could not work for four years]). Thus there is little value to analogizing those cases to this case. Further, assuming, arguendo, that some comparison can be made between this plaintiff's injuries and the future pain and suffering expected in *Adams*, *Brown*, and *Orris*, the awards in those cases should be discounted to reflect the years which have passed since those decisions were rendered.

There is no dispute that the plaintiff suffered extensive, permanent injuries, and that this is amply supported in the record. Plaintiff's two fractured discs were both described as penetrating the entire bone. The herniated disc was described as hanging out of the side of the spine, irritating the S1 nerve root. Plaintiff's expert opined that the impact of plaintiff's fall caused spinal compression leading to spinal stenosis (narrowing of the spinal canal), which can result in recurrent or continued pain, aggravated by certain body postures or extension of the spine. In addition, an MRI and an EMG showed that plaintiff suffered permanent bilateral nerve damage.

Plaintiff's neurologist, the *only expert* to testify at trial, opined that plaintiff will have stiffness, numbness, traumatic arthritis, and chronic pain for the rest of his life; that no surgery can be performed to alleviate his current condition; and that his once active lifestyle will be substantially and permanently limited (*Gonzalez v Rosenberg*, 247 AD2d 337 [award of $750,000 future pain and suffering to plaintiff with one herniated disc necessitating two unsuccessful surgeries and recommending a third surgery]; *see also*, *Strangio v New York Power Auth.* [appeal No. 2.], 275 AD2d 945 [award of $350,000 for 42 years of future pain and suffering for a plaintiff with one bulging, possibly herniated disc]; *Rountree v Manhattan & Bronx Surface Tr. Operating Auth.*, 261 AD2d 324, *lv denied* 94 NY2d 754 [$300,000 for future pain and suffering to a 49-year-old plaintiff who suffered a single herniated cervical disc and was reassigned from his position as a cardiopulmonary technician to a desk job]). The City introduced no expert witnesses to rebut plaintiff's doctor's opinions and relies solely upon the Fire Department Medical Board's determination that plaintiff was capable of returning to work as a basis to seek a reduction in the future pain and suffering award. I disagree with the majority's determination that this plaintiff has "recovered" from his accident. There is no dispute that plaintiff has pain, that he is not as strong as he was before the accident, and that plaintiff follows his doctor's instructions to do extensive stretching every morning to warm up his back before work, and that he does "massive exercises" at least twice a day to attempt to re-condition his spine and allay premature degenerative spine disease. The jury considered all of the evidence in reaching its verdict, including the Medical Board's report, and determined that plaintiff was entitled to $500,000.

This case is an excellent example of why a jury's review of the facts of the specific case, rather than an appellate court's

comparison to precedent, provides the more accurate method of awarding damages. Precedent provides that where surgery will be required, future pain and suffering awards are proportionately larger, to reflect the trauma associated with the surgery (*see, Barrowman v Niagara Mohawk Power Corp.*, 252 AD2d 946, *lv denied* 92 NY2d 817 [plaintiff with herniated and ruptured discs awarded $3 million in past and future pain and suffering where two cervical surgeries were anticipated]). However, surgery is normally performed to cure or abate an injury, ultimately lessening a plaintiff's pain and suffering. The majority mischaracterizes plaintiff as having "planned no further medical intervention to correct any remaining physical problems caused by his injuries." By contrast, there is no available surgery to treat plaintiff's specific spinal injuries. Thus, while the trauma of surgery is not presently anticipated, the record reveals that for the rest of his life, plaintiff will endure chronic pain and suffering with no hope of alleviation. This fact should be reflected in the award for future pain and suffering (*see, Tuitt v Midwood Auto Rental & Leasing Corp.*, 269 AD2d 525 [award of $500,000 for future pain and suffering to plaintiff with multiple fractures in his vertebrae anticipated to cause persistent pain]).

Precedent also allows that awards for future pain and suffering may be reduced where a plaintiff is able to return to work, the rationale being that a plaintiff has essentially recovered where he or she is able to return to former activities, including employment. Here, the majority concludes that "[p]laintiff's return to his demanding work duties, despite his continuing, constant pain, requires" that the award for future pain and suffering be reduced by $100,000. The jury considered plaintiff's return to work, among other factors, in determining the value to be assigned to the pain and suffering plaintiff will endure for the rest of his life. The testimony adduced at trial showed that plaintiff was a firefighter who returned to work, despite intense pain, because he genuinely loved his job. There is no evidence of malingering or faking. Plaintiff testified that his limitations required that he adjust the way he approached lifting and turning; he testified that he had to think about new ways to perform formerly routine tasks to minimize his pain, but that he wanted to work anyway. He also testified that he formerly enjoyed a very active lifestyle, but that he can no longer engage in sports, such as jogging, playing basketball and softball, and lifting weights (*see, Tuitt, supra*). In spite of all this, the majority concludes that the fact that plaintiff has

chosen to work rather than stay at home "requires" the verdict to be reduced. In my opinion plaintiff should not be penalized for his heroic dedication to his work as a firefighter serving the citizens of the City of New York.

WILLIAMS, J. P., WALLACH, BUCKLEY and FRIEDMAN, JJ., concur; MAZZARELLI, J., dissents in a separate opinion.

Judgment, Supreme Court, Bronx County, entered December 21, 1999, modified, on the facts, to remand for a new trial on the issue of damages fro future pain and suffering only, and otherwise affirmed, without costs, unless, within 30 days of service of a copy of this order with notice of entry, plaintiff stipulates to reduce the award for future pain and suffering to $400,000 and to entry of an amended judgment in accordance therewith.