Yvette Huff, Respondent, v Anita L. Rodriguez, Formerly Known as Anita L. Rosario, et al., Appellants. (Appeal No. 5.) [846 NYS2d 841]—

Appeal from an amended judgment of the Supreme Court, Erie County (Frank A. Sedita, Jr., J.), entered October 24, 2006 in a personal injury action. The amended judgment, upon a jury verdict in favor of plaintiff and against defendants, awarded plaintiff the sum of $6,931,288.

It is hereby ordered that the amended judgment so appealed from be and the same hereby is unanimously reversed on the law without costs, the post-trial motion is granted in part, the verdict on liability is set aside, the verdict on damages is set aside in part, and a new trial is granted on liability and, in the event that the new trial results in a finding of liability against defendants, a new trial is granted on damages for past and future loss of earnings, future medical expenses and future pain and suffering only unless plaintiff, within 30 days of service of a copy of the order of this Court with notice of entry, stipulates to reduce the award of damages for past loss of earnings to

$112,980, future loss of earnings to $520,000, future medical expenses to $157,440 and future pain and suffering to $3,000,000.

Memorandum: Plaintiff commenced this action seeking damages for injuries she sustained in a motor vehicle accident while a passenger in a vehicle owned by defendant Enrique Rodriguez and operated by Anita L. Rodriguez, formerly known as Anita L. Rosario (defendant). Following a bifurcated trial, the jury found defendant 100% liable for the accident and awarded damages exceeding $7 million. Supreme Court denied defendants' post-trial motion to set aside the verdicts and an amended judgment was entered.

Contrary to the contention of defendants, the court properly denied their motion for summary judgment dismissing the complaint inasmuch as they failed to meet their initial burden of establishing as a matter of law that defendant was not negligent. "Negligence cases by their very nature do not usually lend themselves to summary judgment, since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination" (*Ugarriza v Schmieder*, 46 NY2d 471, 474 [1979]). Indeed, the jury is often faced with the question whether a party's conduct is reasonable (*see Chilberg v Chilberg*, 13 AD3d 1089, 1090 [2004]; *Cullipher v Traffic Markings* [appeal No. 3], 259 AD2d 992 [1999]).

The evidence submitted by defendants in support of their motion established that defendant drove her vehicle from a parking lane into the flow of traffic, was attempting to turn either to her left or to make a U-turn, and her vehicle was struck by a vehicle proceeding in the same lane of traffic. It is well settled that drivers have a "duty to see that which through the proper use of [their] senses [they] should have seen" (*Lupowitz v Fogarty*, 295 AD2d 576, 576 [2002]; *see generally Weigand v United Traction Co.*, 221 NY 39, 42 [1917]). Even assuming, arguendo, that defendant used her turn signal and looked for oncoming cars, we conclude that the evidence submitted by defendants in support of their motion raises issues of fact rather than eliminating them, i.e., whether defendant failed to see what was there to be seen (*see e.g. Williams v Persaud*, 19 AD3d 686 [2005]; *Rivera v Frontier Tel. of Rochester, Inc.*, 13 AD3d 1065 [2004]) and whether her conduct in pulling into the oncoming lane of traffic and turning was reasonable under the circumstances. We therefore need not address the sufficiency of plaintiff's opposing papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

We conclude that reversal of the amended judgment is

required, however, because the court erred in admitting in evidence a police report containing a police officer's description of the accident and in permitting that officer to testify with respect to the cause of the accident. Although a police report generally is admissible as a business record (*see* CPLR 4518; *Silverman v Sciartelli*, 26 AD3d 761, 762-763 [2006]), statements contained in the report concerning the cause of an accident constitute inadmissible hearsay unless the reporting officer witnessed the accident (*see Matter of Travelers Indem. Co. v Morales*, 188 AD2d 350 [1992]; *Turner v Spaide*, 108 AD2d 1025, 1026 [1985], *lv denied* 66 NY2d 601 [1985], *rearg denied* 66 NY2d 1036 [1985]), the reporting officer is qualified as an expert (*see Miller v Alagna*, 203 AD2d 264 [1994], *lv denied* 84 NY2d 805 [1994]; *see also Silverman*, 26 AD3d at 762-763), or the statements meet some other exception to the hearsay rule (*see generally Matter of Leon RR*, 48 NY2d 117, 122-123 [1979]; *Johnson v Lutz*, 253 NY 124, 128 [1930]). It is undisputed that the officer who authored the report and testified at the trial did not witness the accident and was not qualified as an expert. Contrary to plaintiff's contention, the statements in the report describing the accident and the officer's trial testimony concerning the cause of the accident were inadmissible because the source of the information was never identified (*see Holliday v Hudson Armored Car & Courier Serv.*, 301 AD2d 392, 396 [2003], *lv dismissed in part and denied in part* 100 NY2d 636 [2003]; *Canty v New York City Health & Hosps. Corp.*, 158 AD2d 271, 273 [1990]; *Murray v Donlan*, 77 AD2d 337, 346 [1980], *appeal dismissed* 52 NY2d 1071 [1981]; *see generally Leon RR*, 48 NY2d at 122-123).

Although the officer testified that he obtained the information in his report from the "drivers," he failed to state which of the two drivers provided the information. If the officer received the information from the driver of the second vehicle, the information was exculpatory and thus does not fall within the hearsay exception for a party admission or a statement against interest (*see Cover v Cohen*, 61 NY2d 261, 274 [1984]). Thus, those portions of the report discussing the cause of the accident and the testimony of the officer in which he discussed his conclusions concerning the cause of the accident were improperly admitted at trial (*see id.*). We conclude that the erroneous admission of those portions of the report and the officer's testimony "cannot be deemed harmless because the report [and the officer's testimony] bore on the ultimate issue to be determined by the jury" (*Hatton v Gassler*, 219 AD2d 697, 697 [1995]; *see Conners v Duck's Cesspool Serv.*, 144 AD2d 329 [1988]; *Casey v Tierno*, 127 AD2d 727 [1987]).

Defendants further contend that the damages award is excessive with respect to past and future loss of earnings, future medical expenses and past and future pain and suffering. We agree with defendants, in part. "It is axiomatic that loss of earnings must be established with reasonable certainty . . . and the initial burden of proving lost wages is on the [plaintiff]" (*Faas v State of New York*, 249 AD2d 731, 732-733 [1998]; *see Swedowski v Ethicon, Inc.*, 6 AD3d 1198 [2004]). "Recovery for lost earning capacity is not limited to a plaintiff's actual earnings before the accident, however, and the assessment of damages may instead be based upon future probabilities" (*Kirschhoffer v Van Dyke*, 173 AD2d 7, 10 [1991]). Based on the testimony presented by plaintiff, we conclude that the highest amount the jury could have awarded her for past loss of earnings is $112,980, and the highest amount the jury could have awarded her for future loss of earnings is $520,000.

We further agree with defendants that the damages award for future medical expenses must be modified. As with loss of earnings, future medical expenses must be established with reasonable certainty (*see Beh v Jim Willis & Sons Bldrs., Inc.*, 28 AD3d 1227, 1228 [2006]; *Patterson v Kummer Dev. Corp.*, 302 AD2d 873, 874-875 [2003]). Viewing the evidence in the light most favorable to plaintiff (*see Strangio v New York Power Auth.* [appeal No. 2], 275 AD2d 945, 946 [2000]), we conclude that the highest amount the jury could have awarded plaintiff for future medical expenses is $157,440.

With respect to pain and suffering, "[t]he amount of damages to be awarded is primarily a question of fact for the jury[,] whose determination is accorded considerable deference . . .[, and, b]ecause personal injury awards, especially those for pain and suffering, are not subject to precise quantification . . . , we look to comparable cases to determine at what point an award 'deviates materially' from what is considered reasonable compensation" (*Karney v Arnot-Ogden Mem. Hosp.*, 251 AD2d 780, 782 [1998], *lv dismissed* 92 NY2d 942 [1998]; *see Kolz v Rand* [appeal No. 2], 298 AD2d 982 [2002]; *see e.g. Gerbino v Tinseltown USA* [appeal No. 2], 13 AD3d 1068, 1072). Viewing the evidence in the light most favorable to plaintiff (*see Strangio*, 275 AD2d at 946), we conclude that the evidence established that plaintiff suffered six, or possibly seven, herniated discs and at least three annular tears in her cervical spine. The expert physicians described plaintiff's injuries as "diffuse and widespread" and as "a profound injury pattern." Additionally, plaintiff had "severe" pain in her lumbar spine caused by disc herniations in that area of her spine that would eventually

require lumbar fusion surgery. Plaintiff also suffered from daily, excruciating headaches and described her pain to each examining physician as "intolerable" and "severe." Plaintiff was treated with epidural injections and underwent two painful discogram procedures as well as a subsequent four-level discectomy fusion surgery that had the potential to alleviate only 20% to 25% of the pain. Plaintiff wore a brace for six months after the discectomy surgery and used a bone growth stimulator to enhance her recovery. Although the pain in her neck was reduced from a level 10 out of 10 to a level 8 out of 10, plaintiff did not consider the relief to be a significant improvement. The medical experts anticipated that plaintiff would require additional fusion surgery and that she would have chronic pain for the rest of her life. Plaintiff could not perform many of the activities of daily living without pain and, as a result, she suffered from depression and found it difficult to get out of bed each day.

Based on that evidence, we conclude that the award of $500,000 for past pain and suffering, covering a period of 5½ years, does not deviate materially from what would be reasonable compensation (*see Valentin v City of New York*, 293 AD2d 313 [2002]; *Rountree v Manhattan & Bronx Surface Tr. Operating Auth.*, 261 AD2d 324, 328 [1999], *lv denied* 94 NY2d 754 [1999]; *Gonzalez v Rosenberg*, 247 AD2d 337 [1998]). We further conclude, however, that the award of $5,250,000 for future pain and suffering, to cover a period of 42 years, deviates materially from what would be reasonable compensation (*see Valentin*, 293 AD2d 313 [2002]; *Diaz v West 197th St. Realty Corp.*, 290 AD2d 310, 312 [2002], *lv denied* 98 NY2d 603 [2002], *rearg denied* 98 NY2d 693 [2002]; *Rountree*, 261 AD2d 324, 328 [1999]). We therefore conclude that the highest amount the jury could have awarded plaintiff for future pain and suffering is $3,000,000.

Finally, the record before us does not support defendants' contention that the court erred in determining the amount of collateral source offsets. Based on the foregoing, we reverse the amended judgment, grant defendants' post-trial motion in part, set aside the verdict on liability, set aside the verdict on damages in part, and grant a new trial on liability. In the event that the new trial results in a finding of liability against defendants, we grant a new trial on damages for past and future loss of earnings, future medical expenses and future pain and suffering only unless plaintiff, within 30 days of service of a copy of the order of this Court with notice of entry, stipulates to reduce the award of damages for past loss of earnings to $112,980, future loss of earnings to $520,000, future medical expenses to

$157,440 and future pain and suffering to $3,000,000. Present—Smith, J.P., Peradotto, Green and Pine, JJ.