■ PROGRESSIVE HALCYON INSURANCE COMPANY, Appellant-Respondent, v AMY G. GIACOMETTI et al., Respondents, and VEHICLE ASSET UNIVERSAL LEASING TRUST et al., Respondents-Appellants, et al., Defendant. (Appeal No. 1.) [899 NYS2d 783]—

Appeal and cross appeal from a judgment (denominated order) of the Supreme Court, Niagara County (Richard C. Kloch, Sr., A.J.), entered January 28, 2009 in a declaratory judgment

action. The judgment, among other things, denied in part plaintiff's motion for summary judgment.

It is hereby ordered that the judgment so appealed from is modified on the law by granting that part of the motion of plaintiff with respect to defendant Amy G. Giacometti and granting judgment in favor of plaintiff as follows:

It is adjudged and declared that plaintiff is not obligated to defend or indemnify defendant Amy G. Giacometti in the underlying personal injury actions, by denying that part of the motion with respect to defendants Vehicle Asset Universal Leasing Trust, General Motors Acceptance Corporation and Central Originating Lease Trust and vacating the declaration, by granting in its entirety the cross motion of defendants Vehicle Asset Universal Leasing Trust, General Motors Acceptance Corporation and Central Originating Lease Trust and granting judgment in favor of those defendants as follows:

It is adjudged and declared that plaintiff is obligated to defend and indemnify those defendants in connection with the negligent entrustment cause of action in the underlying personal injury action, and as modified the judgment is affirmed without costs, and the matter is remitted to Supreme Court, Niagara County, for further proceedings in accordance with the following memorandum: These three consolidated appeals arise from an automobile accident that occurred on an interstate highway in North Carolina. Shannon M. Doyle, a defendant in appeal Nos. 2 and 3, was driving a vehicle in which there were two passengers: Amy G. Giacometti, a defendant in appeal No. 1 and the plaintiff in appeal No. 2, and Marle M. Fiocco, a defendant in appeal No. 1 (in which she was incorrectly sued as Marley M. Fiocco) and the plaintiff in appeal No. 3. For reasons that are in dispute, Doyle steered the vehicle to the left, at which time Giacometti grabbed the steering wheel and pulled it to the right. The vehicle thereafter went off the road, became airborne, and crashed among trees, injuring the three women. Doyle had leased the vehicle from Vehicle Asset Universal Leasing Trust, General Motors Acceptance Corporation (GMAC), and Central Originating Lease Trust, defendants in appeal Nos. 1 and 3 (collectively, GMAC defendants), and the vehicle was insured by Progressive Halcyon Insurance Company (Progressive), the plaintiff in appeal No. 1.

Giacometti commenced a personal injury action against Doyle in Niagara County (appeal No. 2), and Fiocco commenced a personal injury action in the same county against Doyle, the GMAC defendants, and Giacometti (appeal No. 3). Doyle also commenced a personal injury action against Giacometti in the

same county, the status of which cannot be discerned from the record before us. Finally, Progressive and Doyle initially commenced a declaratory judgment action in the same county, but Progressive thereafter filed an amended complaint omitting Doyle as a plaintiff (appeal No. 1), seeking judgment declaring that it is not obligated to defend or indemnify Giacometti in the underlying personal injury actions or the GMAC defendants in connection with Fiocco's cause of action asserting that they negligently entrusted the vehicle to Doyle. By the judgment in appeal No. 1, Supreme Court, inter alia, denied that part of Progressive's motion for summary judgment declaring that Progressive is not obligated to defend or indemnify Giacometti, and denied the cross motion of the GMAC defendants for summary judgment declaring that Progressive is obligated to defend and indemnify them in connection with the negligent entrustment cause of action in the underlying personal injury action commenced by Fiocco, and for summary judgment awarding them attorneys' fees incurred by them in their defense of the declaratory judgment action. Progressive and the GMAC defendants each appeal from parts of that judgment. In her appeals from the orders in appeal Nos. 2 and 3, Doyle contends that the court erred in denying her motions for summary judgment dismissing the complaint in appeal No. 2, as well as the complaint in appeal No. 3 against her.

In appeal No. 1, we agree with Progressive that the court erred in denying that part of its motion for summary judgment declaring that it is not obligated to defend or indemnify Giacometti in the underlying personal injury actions. We therefore modify the judgment in appeal No. 1 accordingly. Progressive had disclaimed coverage with respect to Giacometti in those actions on the ground that Giacometti was not an insured person within the meaning of the terms of the policy issued to Doyle. That policy defines an "insured person" in relevant part as "any person with respect to an **accident** arising out of that person's use of a **covered vehicle** with the express or implied permission of **you** or a **relative**." We agree with Progressive that it met its burden of establishing that Giacometti had neither the express nor the implied permission of Doyle to use the vehicle. The evidence in the record, including the deposition testimony of Giacometti, establishes that she did not have express permission to take control of the steering wheel, and we further conclude on the record before us that Doyle did not impliedly consent to Giacometti's use of the vehicle in that manner (*see Allstate Ins. Co. v Gill*, 192 AD2d 1123 [1993]; *Electric Ins. Co. v Boutelle*, 122 AD2d 332 [1986]). The deposition testimony of Giacometti "that [s]he grabbed the wheel to

prevent an accident does not create a question of fact on the issue of permissive use" (*Allstate Ins. Co.*, 192 AD2d at 1123-1124). It is well settled that "[w]here the provisions of [an insurance] policy 'are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement' " (*United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232 [1986]; *see Fulmont Mut. Ins. Co. v New York Cent. Mut. Fire Ins. Co.*, 4 AD3d 724, 725 [2004]).

We reject the further contention of Giacometti and State Farm Insurance Company, a defendant in appeal No. 1 (State Farm), that any use of a vehicle is with permission of the owner pursuant to the presumption in Vehicle and Traffic Law § 388 (1). Initially, we agree with Giacometti and State Farm that Doyle, as the lessee of the vehicle for a period of more than 30 days, was an owner within the meaning of that statute (*see* §§ 128, 388 [3]). Furthermore, it is well settled that "proof of ownership of a motor vehicle creates a rebuttable presumption that the driver was using the vehicle with the owner's permission, express or implied . . . Once the plaintiff meets its initial burden of establishing ownership, a logical inference of lawful operation with the owner's consent may be drawn from the possession of the operator . . . This presumption may be rebutted, however, by substantial evidence sufficient to show that a vehicle was not operated with the owner's consent" (*Murdza v Zimmerman*, 99 NY2d 375, 380 [2003] [internal quotation marks omitted]). Here, that presumption is inapplicable because it was overcome by substantial evidence that the use was without the permission of Doyle, and we therefore conclude that the court erred in denying that part of Progressive's motion.

We agree with the GMAC defendants in appeal No. 1, however, that the court erred in granting that part of Progressive's motion for summary judgment declaring that Progressive is not obligated to defend or indemnify them in connection with the negligent entrustment cause of action against them in the underlying personal injury action commenced by Fiocco and in denying as moot that part of their cross motion for summary judgment declaring that Progressive is obligated to defend and indemnify them in connection with that cause of action. We therefore further modify the judgment in appeal No. 1 accordingly. Although the court by its order in appeal No. 3 ultimately granted the motion of the GMAC defendants for summary judgment dismissing Fiocco's complaint against them, including the negligent entrustment cause of action against them, Progressive had commenced the action in appeal No. 1 before that motion

was granted, and the GMAC defendants expended, inter alia, significant attorneys' fees in their defense of that cause of action before it was dismissed against them. "It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered" (*Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 63 [1991]; *see Petr-All Petroleum Corp. v Fireman's Ins. Co. of Newark*, 188 AD2d 139, 142 [1993]). Contrary to Progressive's contention, the fact "[t]hat the claimed negligence here is based upon the entrustment of the motor vehicle rather than, for example, its condition, in no way alters the unarguable fact that the claim arises out of the ownership and use of the vehicle" (*Progressive Cas. Ins. Co. v Jackson*, 151 Misc 2d 479, 483 [1991], *affd* 181 AD2d 1035 [1992]). Thus, the GMAC defendants are entitled to indemnification from Progressive for their defense of Fiocco's negligent entrustment cause of action against them.

Furthermore, with respect to the judgment in appeal No. 1, we note "that 'an insurer's responsibility to defend reaches the defense of *any* actions arising out of the occurrence,' and defense expenses are recoverable by the insured, including those incurred in defending against an insurer seeking to avoid coverage for a particular claim" (*National Grange Mut. Ins. Co. v T.C. Concrete Constr., Inc.*, 43 AD3d 1321, 1322 [2007], quoting *Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12, 21 [1979]). Therefore, "an insured who prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured" (*U.S. Underwriters Ins. Co. v City Club Hotel, LLC*, 3 NY3d 592, 598 [2004]; *see National Grange Mut. Ins. Co.*, 43 AD3d at 1322-1323). We therefore further modify the judgment in appeal No. 1 accordingly, and we remit the matter to Supreme Court to determine the amount of reasonable attorneys' fees to which the GMAC defendants are entitled in the declaratory judgment action following a hearing, if necessary (*see National Union Fire Ins. Co. of Pittsburgh, Pa. v City of Oswego*, 295 AD2d 905, 906-907 [2002]).

We reject the contention of Doyle in appeal Nos. 2 and 3 that she established her entitlement to summary judgment dismissing the Giacometti complaint as well as the Fiocco complaint in its entirety against her. We conclude that the negligent entrustment cause of action against Doyle in the Fiocco action is lacking in merit inasmuch as we have concluded that Doyle did not

give Giacometti express or implied permission to take control of the steering wheel, and thus the court erred in denying that part of Doyle's motion in appeal No. 3. We therefore modify the order in appeal No. 3 accordingly. We further conclude, however, that the court properly denied that part of the motion of Doyle in appeal No. 2 for summary judgment dismissing the complaint and properly denied that part of her motion in appeal No. 3 for summary judgment dismissing the complaint against her, with the exception of the negligent entrustment cause of action. There are issues of fact on the record before us with respect to the complaint in appeal No. 2 and the remainder of the complaint in appeal No. 3 concerning Doyle's alleged negligence and whether such negligence caused the accident (*see generally Huff v Rodriguez*, 45 AD3d 1430, 1431 [2007]; *Chilberg v Chilberg*, 13 AD3d 1089, 1090 [2004]).

We have considered the remaining contentions of the parties and conclude that they are without merit.

All concur except Fahey, J., who dissents in part in accordance with the following memorandum.

Fahey, J. (dissenting in part). I respectfully dissent in part. In my view, Supreme Court properly denied that part of the motion of plaintiff, Progressive Halcyon Insurance Company (Progressive), for summary judgment declaring that Progressive is not obligated to defend or indemnify defendant Amy G. Giacometti in the underlying personal injury actions. I therefore would affirm the judgment to the extent that it denied that part of Progressive's motion.

"In determining a dispute over insurance coverage, we first look to the language of the policy . . . We construe the policy in a way that 'affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect' " (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 221-222 [2002]; *see Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 NY3d 157, 162 [2005], *rearg denied* 5 NY3d 825 [2005]). "As with the construction of contracts generally, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court' " (*Vigilant Ins. Co. v Bear Stearns Cos., Inc.*, 10 NY3d 170, 177 [2008]). Where there are two reasonable but conflicting interpretations of the terms of an insurance policy, those terms are deemed ambiguous (*see Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326 [1996]), and any issues involving coverage with respect to those terms are resolved in favor of the insured (*see White v Continental Cas. Co.*, 9 NY3d

264, 267 [2007]; *Handelsman v Sea Ins. Co.*, 85 NY2d 96, 101 [1994], *rearg denied* 85 NY2d 924 [1995]; *Trupo v Preferred Mut. Ins. Co.*, 59 AD3d 1044, 1045 [2009]).

Here, the policy of insurance issued by Progressive provides that an "insured person" with respect to that part of the policy concerning liability to others is, inter alia, "any person with respect to an **accident** arising out of that person's use of a **covered vehicle** with the express or implied permission of **you** or a **relative**." In its letter to Giacometti disclaiming coverage, Progressive wrote that "[o]ur investigation of this incident reveals that at the time of the motor vehicle accident [in question], you were operating the covered vehicle without the express or implied permission of the [lessee], Shannon M. Doyle. As such, you do not meet the definition of an 'insured person' as defined in the policy."

The fatal flaw in those statements is that "operation" of the vehicle by Giacometti is not at issue. Rather, at issue is, inter alia, Giacometti's *use* of a covered vehicle at the time of the accident. "Use" and "operation" of a motor vehicle are, of course, not interchangeable, inasmuch as "one who 'uses' a vehicle does not necessarily have to be 'operating' it" (8 Couch on Insurance 3d § 111:31, at 111-56—111-57). The "use" of a vehicle

"includes more than driving or riding in an automobile; it extends to utilizing the vehicle as an instrumental means to an end in any manner intended or contemplated by the insured.

" 'Operation' is interpreted more narrowly than 'use' and is defined as the exercise of direction and control over the vehicle necessary to move the vehicle from one point to another (i.e., driving the vehicle)" (*id.*).

It is undisputed in this case that the incident giving rise to the underlying actions was an "accident" within the meaning of the policy, that the vehicle at issue is a "covered vehicle" within the meaning of the policy, and that Shannon M. Doyle, the lessee of the vehicle, is the "you" to whom the policy refers. Consequently, the review of the relevant policy provision necessarily turns on the definitions of the phrases "arising out of" and "express or implied permission," as well as the term "use." The policy does not define either of those phrases or that term.

The phrase "arising out of" "has been interpreted by [the Court of Appeals] to mean originating from, incident to, or having connection with . . . , and requires only that there be some causal relationship between the injury and the risk for which coverage is provided" (*Worth Constr. Co., Inc. v Admiral Ins. Co.*, 10 NY3d 411, 415 [2008] [internal quotation marks omitted]; *see generally United States Fire Ins. Co. v New York Mar.*

& *Gen. Ins. Co.*, 268 AD2d 19, 21-22 [2000]). Thus, the phrase "arising out of" covers the facts of this case.

The meaning of "express or implied permission" is fairly easy to ascertain. "Express permission," according to the Pattern Jury Instructions within the context of Vehicle and Traffic Law § 388, "may consist of direct statements or acts by or on behalf of the owner that clearly show consent to such operation or use" (PJI 2:245). "Implied permission," again within the context of section 388, may be established by more general or circumstantial evidence that includes previous conduct between the parties with respect to the vehicle in question or other similar vehicles that suggests that there was consent to the use of the particular vehicle on the occasion in question (*see id.*; *Atwater v Lober*, 133 Misc 652, 654 [1929]). In my view, as will be discussed infra, Giacometti was a permissive user inasmuch as she was traveling in the vehicle with Doyle's permission.

The meaning of the term "use" is the pivotal issue in this case. The noun "use" has been defined as, inter alia, "the fact or state of being used," and the verb "use" has been defined as, inter alia, "to carry out a purpose or action by means of" (Webster's Third New International Dictionary 2523-2524 [2002]). In other words, "utilize" is a synonym of "use," which is precisely the conclusion reached in the Couch on Insurance treatise. There, as previously noted, "use" of a vehicle is defined as "includ[ing] more than driving or riding in an automobile; it extends to utilizing the vehicle as an instrumental means to an end in any manner intended or contemplated by the insured" (§ 111:31, at 111-56).

The definition of use in the Couch treatise is based on, inter alia, *Maryland Cas. Co. v Marshbank* (226 F2d 637 [1955]) and *Gering v Merchants Mut. Ins. Co.* (75 AD2d 321 [1980]). Addressing first the decision in *Gering*, I note that it sets forth an expansive definition of the term "use" of a vehicle, which "may include control of the vehicle while a flat tire is being repaired . . . ; getting in and out of the car . . . ; unloading a vehicle . . . ; examining the vehicle's gas gauge while filling up its tank . . . ; and supervising a [mentally challenged] child while being transported" (*id.* at 323; *see Argentina v Emery World Wide Delivery Corp.*, 93 NY2d 554, 560 [1999]). *Maryland Cas. Co.* is more relevant to the facts of this case. There, the United States Court of Appeals for the Third Circuit reached the following conclusion with respect to the meaning of the terms "use" and "operation" within the context of an automobile insurance policy: "The fallacy in the plaintiff's position is that the words 'use' and

'operation', which it seeks to equate as synonymous, are in this setting words of quite different meaning. [T]he 'use' of an automobile by an individual involves its employment for some purpose or object of the user while its 'operation' by him [or her] involves his [or her] direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him [or her,] or by another" (226 F2d at 639).

In my view, *Maryland Cas. Co.* and the Couch treatise correctly conclude that the "use" of a vehicle is the equivalent of the "utilization" of a vehicle, and thus I conclude that Giacometti "used" the vehicle at the time of the accident in the sense that the vehicle facilitated the travel giving rise to the accident. Those authorities notwithstanding, the conclusion that Giacometti used the vehicle at the time of the accident is a logical corollary to existing case law on the issue of use of the vehicle. To the extent that closing the door of a vehicle may be deemed to be part of the process of using or operating the vehicle (*see Glouzwski v Ruback*, 3 AD2d 692 [1957]; *Fireman's Fund Am. Ins. Co. v Olin of N.Y.*, 84 Misc 2d 504, 505 [1975]), and to the extent that this Court has held that the act of opening a vehicle door to exit the vehicle constitutes "use and operation" of that vehicle pursuant to Vehicle and Traffic Law § 388 (*see Henderson v New York Cent. Mut. Fire Ins. Co.*, 56 AD3d 1141, 1142-1143 [2008]; *cf. Kohl v American Tr. Ins. Co.*, 59 AD3d 681, 682 [2009], *lv granted* 13 NY3d 711 [2009]), it necessarily follows that utilizing a vehicle for acts that occur in the interim—including the acts of a passenger traveling from one point to another—may be fairly characterized as the "use" of that vehicle.

The foregoing discussion leads to this point: there is no dispute on this record that Giacometti's use of the vehicle was permissive at least to the extent that Giacometti traveled in the vehicle. The cases upon which the majority relies are not controlling to the extent that Giacometti grabbed the steering wheel because, in those cases (*Allstate Ins. Co. v Gill*, 192 AD2d 1123 [1993]; *Electric Ins. Co. v Boutelle*, 122 AD2d 332 [1986]), the driver (in this case, Doyle) did not resist the efforts of the passenger to assume control of the vehicle.

In any event, in my view the issue of Giacometti's control of the steering wheel is not dispositive of the coverage issue in this case. Most importantly, the language determining whether Giacometti is an insured under the policy is prefaced by the

broad "arising out of" phrase, which is absent from the policies at issue in the *Allstate Ins. Co.* and *Electric Ins. Co.* cases on which the majority relies. Moreover, on these facts, the accident, which occurred after Giacometti grabbed the steering wheel from her seat on the passenger's side of the vehicle, was arguably connected with her traveling in the vehicle, which was undeniably a use of that vehicle and a permissive one at that.

Consequently, the issue of coverage for Giacometti under the Progressive policy in the underlying actions is not ripe for summary judgment in Progressive's favor (*see generally Bovis Lend Lease LMB, Inc. v American Alternative Ins. Co.*, 45 AD3d 397, 398 [2007]). I therefore would affirm the judgment to the extent that it denied that part of Progressive's motion for summary judgment declaring that Progressive is not obligated to defend or indemnify Giacometti in the underlying personal injury actions. Present—Smith, J.P., Fahey, Carni, Lindley and Sconiers, JJ.